GIRARD TRUST BANK, a Banking Corporation organized under the laws of the Commonwealth of Pennsylvania

v.

William H. MARTIN and F. Louise Martin, his wife, Appellants.

No. 76–2471.

United States Court of Appeals, Third Circuit.

Argued March 29, 1977.

Decided June 22, 1977.

David Berger, Michael K. Simon, Philadelphia, Pa., for appellants.

Howard T. Glassman, Edward H. Rubenstone, Leon S. Forman, Wexler, Weisman, Maurer & Forman, P. C., Philadelphia, Pa., for appellee.

Before ADAMS, ROSENN, and WEIS, Circuit Judges.

## OPINION OF THE COURT

ROSENN, Circuit Judge.

Girard Trust Bank ("Bank"), a banking corporation organized under the laws of the Commonwealth of Pennsylvania, entered a judgment by confession on December 15, 1975, in the United States District Court for the Eastern District of Pennsylvania against William H. Martin and F. Louise Martin, his wife, appellants ("Martins"), in the sum of $3,156,940.37 arising out of appellants' alleged default on four promissory notes. The amount confessed consisted of $2,450,000 in unpaid principal, $225,377.20 in purported due interest, since waived, and collection-counsel fees of $481,567.17 on the outstanding claimed principal and the waived interest included with the judgment.

Promptly after learning of the entry of the confessed judgment, appellants filed a petition to open and reduce the judgment alleging, *inter alia*, (1) that the component of the judgment attributable to collection fees was unconscionably high, and (2) that appellants were entitled to a setoff of $364,610.92 in light of other litigation between the parties. The petition also included allegations that the Bank had entered into a fraudulent conspiracy with Stanton Halverson, Maurice B. Turner, and Ernest Garfield, co-obligors on the notes, to defraud and injure appellants to the benefit of the conspirators. The petition further alleged that Halverson, Turner, Garfield, and the Bank had conspired fraudulently to induce appellants to execute the four promissory notes on which judgment was confessed, which notes were also signed by Messrs. Turner, Garfield, Halverson, and their wives as co-obligors. In addition, appellants' petition claimed that Girard breached its fiduciary duty to the Martins in connection with their execution of the four notes.

The Bank did not answer the petition but filed a motion to dismiss asserting that the petition was insufficient on its face and as a matter of law to support the request to open judgment. The district court without written opinion dismissed the petition and at the same time denied appellants' motion for a stay of all proceedings pending an appeal to this court. The court orally stated the basis of its order:

> I view this matter in this action as a straightforward commercial transaction among business people, a transaction in which the defendant husband [Martin] voluntarily entered into as a businessman and, because this is the nature of the transaction, I am not swayed by the argument made by the defendants that there is any breach of fiduciary duty on the part of the plaintiff.

Appellants promptly appealed to this court and at the same time filed a petition with this court for a stay of all proceedings pending appeal. We granted the stay on the condition that appellants post a bond with the district court, a condition which appellants have not fulfilled. Having reviewed the contentions of the parties, we conclude that the district court did not err in its order and we affirm.

### I.

The primary issue before this court is whether the district court erred in its determination that appellants' "petition" failed to set forth sufficient facts which provided an adequate basis for opening or vacating the judgment at issue.

The backdrop of this proceeding begins with two valuable tracts of land in Burlington County, New Jersey, originally owned

by the Martins and leased by them to Medford Nursery, Inc. ("Nursery"). William H. Martin was the sole founder of Nursery and prior to July 25, 1973, its president and sole stockholder; he, his wife, and another person designated as his nominee, were its directors.

According to the petition, William Martin sought a purchaser in the spring and summer of 1973 for all or part of his interest in Nursery. John Franco, a vice president of the Bank, learned of Martin's intention and offered to assist him in securing a purchaser on the payment of a finder's fee of $75,000. Thereafter, Franco introduced Martin to Messrs. Garfield, Halverson, and Turner, with whom the Bank had engaged in prior business transactions. Following negotiations, Garfield, Halverson, and Turner each purchased 25 percent of the issued and outstanding stock of Nursery. Martin received $323,000 in cash plus notes in the principal sum of $157,000. As part of the same transaction, Martin sold the two tracts of land with improvements thereon to Nursery and received $258,000 in cash, a $602,000 note and a purchase money mortgage for the balance of the purchase price.

Subsequent to the consummation of the foregoing transaction, on September 21, 1973, the four principals of Nursery, with Martin serving as president and director, obtained a $2,000,000 loan from the Bank, the proceeds of which were utilized by Nursery for working capital and to repay certain of its outstanding obligations. Each of the principals and their respective wives executed four notes as primary obligors payable to the Bank; Nursery guaranteed the note and gave the Bank a security interest in Nursery's non-realty assets. Each of the notes contained confessions of judgment and each provided that the obligors were jointly and severally liable. The first note became due on September 30, 1974; the remaining three notes were payable on demand. On December 30, 1974, January 8, 1975, and January 20, 1975, the principals of Nursery obtained additional loans from the Bank aggregating $450,000 which were also used in Nursery's operation. On December 15, 1975, upon failure of the Martins and the other obligors to satisfy their obligations, the Bank confessed judgment against the Martins in the sum of $3,156,940.37 on the aforesaid notes.[1]

Much of the petition to open judgment sets forth averments concerning the procedural background of the judgment and the historical facts underlying the transactions leading to the loans at issue and to this litigation. The allegations of fraud and conspiracy between the Bank and Martins' co-obligors on the promissory notes are general and conclusory. The Martins assert that beginning on or about July of 1973, the Bank entered into a conspiracy with *inter alia,* Messrs. Garfield, Halverson, and Turner, William Martin's co-principals in Nursery, "for the purpose of enriching themselves at the expense" of the Martins. In connection with the petition to open judgment, the Martins sought discovery so that they could present a complete record in support of the petition. Although they recognized that the Federal Rules of Civil Procedure do not contain a specific provision governing the opening of judgment by confession, they asserted that Pa.Rule C.P. 2959 expressly recognizes the right of the petitioner to conduct discovery in support of a petition to open judgment.

## II.

Essentially it is appellants' contention that a petition to open judgment in the federal court is a pleading and as such it should be viewed in accordance with the liberal spirit and purpose of the Federal Rules of Civil Procedure, notwithstanding that the underlying action and the defenses thereto are predicated on state law. The Martins maintain that their petition to open judgment should be governed by modern

---

1. The petition avers that affidavits submitted to the district court by counsel for the Bank and one of its officers, reveal that the Bank also has confessed judgment against the co-obligors on the notes, and "all of the joint obligors, with the exception of the defendants herein (the Martins) have made satisfactory arrangement for liquidation of their joint and several and other obligations to the bank."

liberal federal notice pleading prevalent in the federal courts, rather than by the traditional requirements of particularity which the district court applied. Specifically, the Martins urge that the petition should be considered under the notice pleading standards of Rule 8 of Fed.R.Civ.P., that the standards therein governing affirmative defenses in an answer to a complaint "must also apply to affirmative defenses set forth in a petition to a judgment," and that the federal rules grant the right to conduct full discovery and pretrial proceedings prior to the determination of their petition.

The Bank, on the other hand, contends that Martins' petition is not a "pleading" but is in fact a motion filed pursuant to Rule 60(b),[2] Fed.R.Civ.P. and, as such, is governed by the legal standards and requirements of that rule, not the notice pleading standards of Rule 8. The Bank argues that the requirement of Rule 7(b)(1) that a motion "shall state with particularity the grounds therefor" applies with full force to the Martins' petition. Furthermore, avers the Bank, even accepting *arguendo* Martins' position that notice pleading standards are applicable to their "Petition," Rule 9(b), Fed.R.Civ.P., specifies "[I]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Thus, according to the Bank, Martins' petition is deficient under the federal rules whether it is treated as a motion or as a pleading.

The Martins rely principally on *D. H. Overmyer Co. v. Frick Corp.*, 405 U.S. 174, 92 S.Ct. 775, 31 L.Ed.2d 124 (1972), claiming that the Court there held that "the burdens of asserting a defense in order to open a judgment could not be more arduous than the burden of asserting a defense to a regular complaint." *Overmyer* involved a constitutional challenge to a note containing a confession of judgment on the ground that it violated the Due Process Clause of the fourteenth amendment. In commenting on its holding that the cognovit clause was not *per se* unconstitutional, the Court observed that the maker of a note with a cognovit clause was not thereby rendered defenseless since a court in Ohio where the judgment was entered could vacate the judgment upon showing of a valid defense. While *Overmyer* thus seems to require that there be some procedure by which a debtor against whom judgment is confessed may test the validity of the judgment against him, the case does not address the standards and the burden a petitioner must meet in order to set aside or open a judgment of the court.

The Martins do not attack the constitutionality of the cognovit clause. They only seek to open and vacate the judgment and plainly aver in paragraph 1 of their "Petition" that the petition is presented pursuant to Rule 60(b), F.R.Civ.P., and Pennsylvania Rule 2959, Pa.Rules of Civil Procedure, pertaining to the opening of judgments and that it involves the inherent and supervisory powers of the Federal Courts with respect to judgments entered on their dockets. In the district court, however, counsel for Martins did not urge Rule 60(b) but informed the court that "we are relying on Rule 8 of the Federal Rules of Civil Procedure."

▮ Notwithstanding appellants' belated attempt to recharacterize their petition as a "pleading," we hold that a petition to open or vacate a judgment entered in the federal courts is procedurally governed by Rule 60, F.R.Civ.P. Our examination of the Federal Rules convinces us both that Rule

---

**2.** Rule 60(b), Fed.R.Civ.P., provides in pertinent part:

On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under rule 59(b);

(3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.

60 applies by its terms to this type of procedure and that the rules relating to "pleadings" do not contemplate this kind of petition. Viewing the petition as a motion under Rule 60, Rule 7(b) requires that the circumstances constituting the grounds for the fraud or conspiracy must be alleged with particularity. The requirements of Rules 7(b) and 9(b) that the circumstances constituting the fraud be stated with particularity merely restate the long standing rule at common law. *See Chamberlain Machine Works v. U. S.*, 270 U.S. 347, 349, 46 S.Ct. 225, 70 L.Ed. 619 (1926); *U. S. v. Throckmorton*, 98 U.S. 61, 64, 25 L.Ed. 93 (1878). A petition to open or vacate a judgment of the court on the ground of fraud, therefore, should "state distinctly the particular acts of fraud and coercion relied on, specifying by whom and in what manner they perpetrate, with such definiteness and reasonable certainty that the court might see that, if proved, they would warrant the setting aside of the [judgment]." *Chamberlain Machine Works v. U. S., supra*, 270 U.S. at 349, 46 S.Ct. at 226.

■ An analysis of the petition in the instant proceeding reveals that the allegations of fraud are at once overly general, obscure, and conclusory. By interjecting innumerable references to undisputed facts pertaining to the sales transaction and loan, the Martins have attempted to give substance to their general allegations of conspiracy. Those allegations are not supported by averments of facts which show or from which reasonable inferences can be drawn that the loan to the Martins and their co-obligors formed the basis for a fraudulent conspiracy between the Bank, Garfield, Halverson, and Turner to enrich themselves at the Martins' expense. The only allegation of fraud in the petition which approaches any degree of specificity is the averment that the conspirators had an understanding since before September 1973 that in the event of a default on any

joint notes of the purchasers and Martin, the Bank would look solely to the Martins for payment and would execute solely on the Martins' assets, forgiving the purchasers of the notes. The Martins concede that they executed the notes together with Garfield, Halverson, and Turner and that under the terms of the notes, each obligor was jointly and severally liable. It is also conceded that the obligors have refused to make payment after demand and no facts are set forth showing fraud in the execution of the notes or loans. Furthermore, the charge that the Bank determined to relieve certain of the co-obligors cannot prevail as defense as a matter of law. We discern nothing after carefully reviewing the allegations in the petition that would lead to the conclusion that the Bank was a party to any fraudulent conspiracy. The chronology reveals instead that this was an ordinary bank loan and that the Martins' distressing situation "is one brought about largely by [their] own misfortune and failure or inability to pay." *D. H. Overmyer Co. v. Frick Co., supra*, 405 U.S. at 182, 92 S.Ct. at 781.

■■ A petition to vacate a judgment is addressed to the sound legal discretion of the court and its disposition will not be disturbed except for an abuse of discretion. *International Nikoh Corp. v. H. K. Porter Co.*, 374 F.2d 82 (7th Cir. 1967); *Douglass v. Pugh*, 287 F.2d 500 (6th Cir. 1961); *Independence Lead Mines Co. v. Kingsbury*, 175 F.2d 983, 988 (9th Cir.), *cert. denied*, 338 U.S. 900, 70 S.Ct. 249, 94 L.Ed. 554 (1949). We find no such abuse here. In the circumstances of this proceeding, we also find no abuse of discretion in the district court's refusal to allow discovery or amendment of the petition.[3]

### III.

The Martins also complain in their petition that the collection attorneys' fees charged in the notes are exorbitant and

---

3. After the district court announced its decision to grant the motion to dismiss the petition to open judgment, counsel for the Martins sought to amend the petition. The district court refused to grant permission not merely because of

the insufficiencies of the averments in the petition even taking them as true, but after probing deeply at oral argument into the presence of any fraud, it was satisfied that the amendment would be futile. Moreover, the court was con-

that petitioners are also entitled to credits on the judgment to reflect a forgiveness of the pre-1976 unpaid interest on the notes which was extended to each of the co-obligors by the Bank subsequent to the entry of judgment. We need not decide these issues since the Bank does not contest Martins' contention that the judgment may be subject to reduction and modification as a result of developments following the entry of judgment, including a future determination at an appropriate time as to the proper allowance for collection fees.[4]

### IV.

The order of the district court dismissing appellants' petition to open and vacate the judgment will be affirmed, without prejudice to the Martins to move for credits on the judgment to reflect the forgiveness of interest, settlement of certain litigation, and any excess attorneys' fees as may be determined by the district court.

cerned with the great delay and the equities which "certainly lie with the plaintiff here." These reasons apparently also influenced the court's decision to deny discovery. This is not to say that discovery should not be permitted under appropriate circumstances.

4. The Bank in its brief with this court represents that it "would not object or contest (1) a credit on the judgment in the amount of $225,-373.20 to reflect a forgiveness of pre-1976 un-

paid interest on the notes which was extended to each of the co-obligors by Girard subsequent to the entry of the judgment; (2) a credit on the judgment in the amount of $348,147.49 to reflect the settlement of certain litigation involving appellant Martin subsequent to the entry of the judgment." We expect that the district court will hold the bank to these representations.