John O'NEILL and Samuel Goodman

v.

CITY OF PHILADELPHIA, et al.

Civ. A. No. 91–6759.

United States District Court,
E.D. Pennsylvania.

March 29, 1993.

---

Andrew F. Mimnaugh, Vincent J. Ziccardi, Philadelphia, PA, for plaintiffs.

Richard G. Freeman, Debra M. Russo, Chief Asst. City Sol., Bonnie Brigance Leadbetter, Fineman & Bach, P.C., Philadelphia, PA, for defendants.

## MEMORANDUM

DALZELL, District Judge.

Plaintiffs John O'Neill and Samuel Goodman have sued to challenge the 1989 reorganization of Philadelphia's system of adjudicating parking violations. Plaintiffs in their second amended complaint name as defendants the City of Philadelphia ("City"), the Office of Philadelphia's Director of Finance (the "Office of Director of Finance"), and the Philadelphia Bureau of Administrative Adjudication ("BAA").[1]

Plaintiffs claim that the 1989 reorganization violated the constitutional prohibition against *ex post facto* legislation, plaintiffs' due process rights under the Fifth and Fourteenth Amendments of the United States Constitution, and Pennsylvania law. Messrs. O'Neill and Goodman seek restitution of all fines, costs and fees they have paid as a result of the unlawful aspects of the reorganization, as well as injunctive relief.

On October 15, 1992, we denied plaintiffs' motion for class certification. We concluded that maintaining this suit as a class action was not superior to other available methods for the fair and efficient adjudication of this controversy. We held instead that a test

---

1. Although counsel for plaintiffs and defendant persist in referring to the BAA and the Office of the Director of Finance as separate defendants, it is clear they are part of the City of Philadelphia, and not separate juridical persons. In reality, therefore, there is only one defendant, the City.

case would be far superior to a class action for resolution of this controversy.

Both parties have moved for summary judgment after submitting a stipulation of facts. After carefully sifting through plaintiffs' many claims, we have found one nugget that warrants granting relief to plaintiffs, and to that extent we will grant plaintiffs' motion for summary judgment and deny defendant's.

## I. *Factual Background*

The underlying facts of this suit are in all material respects uncontroverted.

The essence of O'Neill and Goodman's second amended complaint is that the City violated their constitutional rights when a Hearing Examiner of the BAA rather than the Philadelphia Traffic Court (the "Traffic Court") adjudicated parking tickets they received before June 1, 1989. A brief history will highlight the significance of this change and how it came about.

The Pennsylvania Constitution, Article 5, Schedule 16(s), authorized the creation of traffic courts throughout the Commonwealth. 42 Pa.Cons.Stat. § 1321 created the Philadelphia Traffic Court. Under 42 Pa.Cons.Stat. § 1302, the Pennsylvania General Assembly assigned Traffic Court exclusive jurisdiction over all summary offenses arising under Title 75 (Motor Vehicles) and under Local Ordinances enacted pursuant to Title 75. The City enacted Title 12 of the Philadelphia Code, which established traffic control rules, including parking violations, and provided for enforcement.

In 1982, the Pennsylvania General Assembly authorized the Philadelphia Parking Authority to establish on-street parking regulations and create a comprehensive system of administration and enforcement. Pursuant to this enabling legislation, seven years later the Philadelphia City Council (the "City Council") adopted Bill No. 350 (the "Ordinance") on March 16, 1989. The Mayor signed the Bill No. 350 six days later. By its terms the Ordinance adds a new Chapter, 12–2800, *et seq.*, entitled "Administrative Adjudication of Parking Violations," amending Title 12 of The Philadelphia Code. The Ordinance became effective on June 1, 1989, and granted the Director of Finance authority to adopt regulations for the hearing and determination of parking violations, and the imposition of civil penalties (12–2802[1]). The present action relates only to the retrospective application of this Ordinance.

To understand plaintiffs' challenges to the retrospective application of the Ordinance, it is illuminating to examine briefly the process of adjudicating parking tickets that existed before the Ordinance became effective. Between 1982 and June 1, 1989, original jurisdiction lay with the Traffic Court and dissatisfied defendants appealed its decisions to the Court of Common Pleas of Philadelphia County (Exhibit 13, pp. 19–20). During that time, the Philadelphia Police Department brought tickets to the attention of the Traffic Court in the form of an information. The Traffic Court filed the information and generated a summons, ordering individuals to appear at trials to defend themselves on the criminal offense for all violations that remained unpaid after eight days (*id.* p. 21). If the summons did not elicit a response, the Traffic Court issued a warrant for the individual's arrest (*id.* at 25).

The Ordinance created a period of dual jurisdiction. A person who had received a parking ticket, citation or summons from the Traffic Court between October 2, 1987 and June 1, 1989, could choose to proceed either in Traffic Court or the BAA (12–2807[8]).[2] This option was available until "the Fall of 1990"[3], when the Traffic Court stopped hearing parking ticket cases.

At this point we turn to the events that befell our plaintiffs, Goodman and O'Neill. Prior to June 1, 1989, they each received parking tickets in the City as follows:

---

2. Individuals who received tickets prior to October 1, 1987 were automatically eliminated from the computer system that recorded delinquent parking violations because they presumptively qualified for the statute of limitations defense.

3. The parties' stipulation, which is not an exemplar of lawyers' precision, does not advise us of the exact date.

| Goodman | O'Neill |
|---|---|
| May 16, 1989 | May 1, 1989 |
| December 7, 1988 | October 10, 1988 |
| December 11, 1987 | November 28, 1987 |
| December 11, 1987 | |
| February 26, 1987 | |

Neither paid the fines, and in accordance with the procedures described above, the Traffic Court lodged an information and issued a summons. A summons was served on each stating the fines and penalties for the offense, with a notice to appear in Traffic Court on a date certain. Neither Goodman nor O'Neill appeared for the scheduled hearing, and the Traffic Court periodically sent notices to them seeking payment (*see* Exhibit 6 and Stipulation of Facts ¶ 21).

In November of 1989, Goodman and O'Neill each received a "Violation Warning Notice" from the Office of the Director of Finance (Exhibit 4). This notice informed them that they could elect to appear before the Traffic Court, as a criminal matter, or proceed in the Director of Finance's Bureau of Administrative Adjudication as a civil action.[4] One of the many disputes between the parties centers on this notice. Plaintiffs contend that the notice the Director of Finance sent was legally insufficient to enable the recipient to make an intelligent waiver of his or her right to appear before the Traffic Court.

Goodman and O'Neill took no action in response to this notice. As a result, each received an "Order of Default" which told them that the failure to pay the stated amount of fines and penalties "could result in the City taking additional legal actions against [them], which could have an adverse effect on [their] property rights, among other consequences" (Exhibit 11).

On March 4, 1991, Goodman requested a hearing before the BAA to adjudicate a ticket he received on February 4, 1991. The BAA responded by scheduling a hearing for March 18, 1991, and listed six outstanding violations for disposition at that hearing. At the March 18 hearing, the BAA listed four additional tickets, including violations that had occurred before June 1, 1989 (Exhibit 7 and Stipulation of Facts ¶ 15). Counsel for Goodman appeared at the hearing and objected to including tickets issued before June 1, 1989, on the basis that they were within the Traffic Court's exclusive jurisdiction and that Goodman did not consent to the BAA's jurisdiction. Moreover, Goodman's counsel raised the statute of limitations defense as to all the tickets that were more than two years old.[5]

The Hearing Examiner overruled the objections, apparently stating that the BAA had jurisdiction regardless of consent, and that the statute of limitations defense only applied in Traffic Court which treated parking violations as criminal offenses (*see* Exhibit A, Affidavit of Vincent J. Ziccardi ¶¶ 5–9 attached to Plaintiffs' Memorandum in Support

---

4. Ordinance 350 altered the treatment of parking violations from criminal to civil violations. Until March 7, 1989, the Philadelphia Traffic Court Rules governed all parking offenses filed with the Traffic Court. Its provisions entitled a defendant to three rights that are not provided in a BAA hearing: a disposition could not be made without the personal appearance in Traffic Court of the alleged parking violator (*see* Exhibit 5, "Philadelphia Traffic Court Rules," Rule 5.1 and Rule 6.10); the defendant's guilt had to be proved beyond a reasonable doubt; and a two-year statute of limitations applied.

5. The City asserts that anyone who did not qualify for the statute of limitations defense as of June 1, 1989, lost their right to assert it before the BAA. Since none of Goodman's tickets qualified for the statute of limitations on that date, they remained on his traffic violation record. It is Goodman's position that the relevant date for determining if the City's actions are time barred is the date that he appeared for a hearing regardless if that occurred after June 1, 1989. It is not necessary for us to resolve the merits of this particular dispute to reach our holding.

of Motion for Summary Judgment). The Hearing Examiner determined liability on the ten tickets, resulting in the dismissal or reduction of some, and assessed a total fine of $247.10. This fine included $173.00 for tickets issued before June 1, 1989. Goodman has paid his fines.

When O'Neill tried to have three parking tickets listed for disposition in the Traffic Court in April of 1991, the court informed him that it no longer heard parking violation cases (Stipulation of Facts ¶ 18). Subsequently, O'Neill requested and the BAA granted a hearing for August 30, 1991 (Stipulation of Facts ¶¶ 20–21). O'Neill attended the hearing with his counsel present, raised the same objections as Goodman, and experienced the same lack of success. The Chief Hearing Examiner determined liability, and reduced the assessment of fines to $45.00. To date, O'Neill has not paid any of his fines.

On October 30, 1991, plaintiffs filed this action asserting violation of their rights under the United States Constitution. They also invoke their rights under 42 U.S.C. § 1983 and claim violations of Pennsylvania state law.

Specifically, plaintiffs' second amended complaint asserts five counts. The First Count avers that the City violated plaintiffs' due process rights, as guaranteed by the Fifth and Fourteenth Amendments of the United States Constitution, because, at a minimum, the hearings before the BAA should have entitled plaintiffs to all the rights available in a pre-organization Traffic Court proceeding.

The Second Count claims that the City violated plaintiffs' federal due process rights, as well as the United States Constitution's limitation on *ex post facto* legislation set forth in art. I, § 9, cl. 3 and art. I, § 10, cl. 1. Plaintiffs allege that the City violated these provisions of the federal Constitution primarily because the BAA did not obtain the plaintiffs' consent to its jurisdiction, as required by the Ordinance, and nevertheless (1) applied the laws and regulations governing hearings in effect under the 1989 amendments to violations that had occurred when exclusive jurisdiction resided in the Traffic Court, and (2) imposed the 1989 civil burden of proof to cases that remained within the exclusive jurisdiction of the Traffic Court and, thus, entitled to the criminal burden.

The second amended complaint's Third Count alleges that the City violated state law by exceeding the authority granted by 53 Pa.Stat. § 345(17) when it amended the Traffic Code by providing, in § 12–2807(8), for the consent of ticket holders to retroactive application of the amended Traffic Code to pending violations cognizable in the Traffic Court. They contend that this was an unlawful extension of the BAA's subject matter jurisdiction.[6]

The Fourth Count asserts that the BAA violated the United States Constitution's limitation on *ex post facto* legislation, as founded in art. I, § 9, cl. 3 and art. I, § 10, cl. 1, when it unlawfully extended the applicable statute of limitations by holding proceedings on parking violations that were time barred pursuant to Pennsylvania law, 42 Pa.Cons.Stat. § 5553(e). The Fourth Count further claims that these proceedings also violated 42 Pa. Cons.Stat. § 5553(e) by its own terms.[7]

The Fifth Count alleges that the Ordinance, § 12–2807(4), is a Bill of Attainder to the extent it subjects plaintiffs' vehicles to seizure without a hearing in violation of art. I, § 10, cl. 1 of the United States Constitution.

We have jurisdiction under 28 U.S.C. § 1343.[8]

---

**6.** Because plaintiffs have not pressed this argument in their motion for summary judgment, we treat this claim as withdrawn at this procedural stage.

**7.** Plaintiffs did not argue this portion of the Fourth Count, which alleges a pure state law violation, in their motion for summary judgment; consequently, we treat it as withdrawn for purposes of resolving the motions.

**8.** We decline the City's invitation to abstain from exercising jurisdiction under the principles of federalism enunciated in *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). *See Gwynedd Properties, Inc. v. Lower Gwynedd Township*, 970 F.2d 1195 (3d Cir.1992).

## II. *Summary Judgment Standard*

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). An issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A factual dispute is "material" only if it might affect the outcome of the suit under governing law, *id.* at 248, 106 S.Ct.· at 2510, and all inferences must be drawn, and all doubts resolved, in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Gans v. Mundy*, 762 F.2d 338, 341 (3d Cir.), *cert. denied*, 474 U.S. 1010, 106 S.Ct. 537, 88 L.Ed.2d 467 (1985).

On a motion for summary judgment, the moving party bears the initial burden of identifying for the Court those portions of the record that it believes demonstrate the absence of dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). To defeat summary judgment, the non-moving party "may not rest upon the mere allegations or denials of [its] pleading, but [its] response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). The non-moving party must demonstrate the existence of evidence that would support a jury finding in its favor. *See Anderson*, 477 U.S. at 248–49, 106 S.Ct. at 2510–11.

As noted above, given that the parties dispute the legal consequences of admitted public acts, this case is peculiarly appropriate for resolution by summary judgment.

## III. *Legal Analysis*

### A. *Bill of Attainder and Ex Post Facto*

■ Plaintiffs' challenge to the Ordinance as an unconstitutional *ex post facto* law or a bill of attainder hinges on whether the fines

and penalties it prescribes are civil or penal in nature.

In *United States v. Ward*, 448 U.S. 242, 100 S.Ct. 2636, 65 L.Ed.2d 742 (1980), the Supreme Court enunciated a two-prong inquiry for determining whether a penalty is civil or criminal. The first issue is whether the legislature has evinced, either expressly or impliedly, a preference for one label or the other. *Id.* at 248, 100 S.Ct. at 2641. Second, where the legislature has evinced an intention to create a civil penalty, a court must determine whether the statutory scheme is so punitive either in purpose or effect as to negate the legislature's intention. *Id.* at 248–49, 100 S.Ct. at 2641–50. In making the latter inquiry, "only the clearest proof could suffice to establish the unconstitutionality of a statute on such a ground." *Id.* at 249, 100 S.Ct. at 2641 (quoting *Flemming v. Nestor*, 363 U.S. 603, 617, 80 S.Ct. 1367, 1376, 4 L.Ed.2d 1435 (1960)). Finally, the Supreme Court in *Ward* found the seven considerations set forth in *Kennedy v. Mendoza–Martinez*, 372 U.S. 144, 168–69, 83 S.Ct. 554, 568–69, 9 L.Ed.2d 644 (1963) helpful in making the second inquiry, noting, however, that the list is neither exhaustive nor dispositive. *Ward*, 448 U.S. at 249, 100 S.Ct. at 2641. Those factors are

> [w]hether the sanction involves an affirmative disability or restraint, whether it has historically been regarded as a punishment, whether it comes into play only on a finding of *scienter*, whether its operation will promote he traditional aims of punishment—retribution and deterrence, whether the behavior to which it applies is already a crime, whether an alternative purpose to which it may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned....

*Mendoza–Martinez*, 372 U.S. at 168–69, 83 S.Ct. at 567–68 (footnotes omitted).

In the present case, we find that City Council enacted the Ordinance unambiguously intending parking infractions to be civil rather than criminal in nature. The Ordinance added Chapter 12–2800 *et seq.* to grant to the Director of Finance authority to pro-

mulgate regulations for the hearing and determination of parking violations outside of the criminal justice system (12–2801[3] ). In the preamble to the Ordinance, the City Council expressly recognized that "the current system of parking violation enforcement within the criminal justice system has resulted in the improper and inefficient allocation of parking violation enforcement responsibility ... [and] unfairness to citizens caused by the threat and stigma of a criminal sanction" (12–2801[2] ).

Specifically, the Ordinance empowered the Director of Finance to provide "for the imposition of civil penalties, costs and additional fees ..." for parking violations in the City (12–2802[1] ). Moreover, the Ordinance states that a person who admits committing a parking violation "shall ... pay the civil fines and costs, and any additional fees as may be due for failure to answer [the summons] within the time required" (12–2806[3] ). Finally, § 12–2809, entitled "Civil Penalties and Costs", characterizes all costs and penalties prescribed under Title 12 as non-criminal.

Based on the foregoing, we conclude that the City Council explicitly intended the Ordinance to be regulatory in character and its penalties civil in nature.

Having held that the City had a manifest intent to consider penalties for parking infractions as civil and not criminal, we next turn to the second level of the *Ward* analysis, and apply the *Mendoza–Martinez* standards to aid in deciding whether the content of the Ordinance conforms with the label City Council gave it.

Unlike many penal provisions, the Ordinance does not require a showing of *scienter*. We recognize, however, as plaintiffs suggest, that the City intends a portion of the fines collected to serve as a deterrent to potential wayward parkers, a traditional purpose of criminal provisions. In *Gardner v. City of Columbus, Ohio*, 841 F.2d 1272 (6th Cir. 1988), the Sixth Circuit addressed a similar argument challenging amendments to the Columbus City Code that also changed parking violations from criminal to civil offenses. In that case, plaintiffs argued that the penalties were penal in nature because they had no relation to damage, harm or cost to the city. They therefore concluded that there could be no other purpose to which the sanction could be rationally connected, thereby violating the sixth *Mendoza–Martinez* factor.

The Sixth Circuit reasoned, and we agree, that while deterrence may be one aim of the penalties, the other goal is to defray the cost of providing and regulating parking on urban streets. The Sixth Circuit concluded that "the fines are part of a comprehensive regulatory scheme and are not punitive in nature." *Gardner*, 841 F.2d at 1278. Plaintiffs have not proffered any fact that would distinguish the Philadelphia from Columbus schemes on this point.

Moreover, plaintiffs energetically argue that on its face the Ordinance is unambiguously criminal in nature. In support of this position, they point out that the penalties the Traffic Code set forth, before the Ordinance's amendments, are identical to those established by the new § 12–2809, "Civil Penalties and Costs". Plaintiffs note that the only difference is that "the penalties are increased in most cases by 33%" (Plaintiffs' Brief In Opposition to Defendants' Motion for Summary Judgment at p. 18).

Plaintiffs fail to recognize one other crucial distinction between the present Traffic Code's penalties and those of its predecessor. Before the City Council's 1989 amendments, the Traffic Code held out the possibility of imprisonment for violators (*see* § 12–912, *amended by* § 12–912 (1989)). In its present incarnation, the City Council has eliminated the threat of jail (*see* § 12–912).

On its face, there is not sufficient evidence of the criminal nature of the Ordinance to override City Council's unambiguous designation of the Ordinance as one imposing civil penalties. Accordingly, we conclude that plaintiffs have not offered the "clearest proof" that the fines in question are so punitive in purpose or effect as to negate the express intention of the City Council that all such fines be deemed civil penalties.

With this analysis as our backdrop, we turn to plaintiffs' claims that the Ordinance is a bill of attainder or an unconstitutional *ex post facto* law. Both of these challenges to

the Ordinance fail based on our finding that the new law's penalties are civil in nature.

A bill of attainder is "a legislative Act which inflicts punishment on named individuals or members of an easily ascertainable group without a judicial trial." *United States v. O'Brien,* 391 U.S. 367, 383 n. 30, 88 S.Ct. 1673, 1682 n. 30, 20 L.Ed.2d 672 (1968). "The proscription against bills of attainder reaches only statutes that inflict punishment on the specified individual or group." *Selective Serv. Sys. v. Minnesota Pub. Interest Research Group,* 468 U.S. 841, 851, 104 S.Ct. 3348, 3354, 82 L.Ed.2d 632 (1984). In analyzing challenged legislation, the Supreme Court has applied a "functional test of the existence of punishment, analyzing whether the law under challenge, viewed in terms of the type and severity of burdens imposed, reasonably can be said to further nonpunitive legislative purposes." *Nixon v. Administrator of Gen. Servs.,* 433 U.S. 425, 475–76, 97 S.Ct. 2777, 2806–07, 53 L.Ed.2d 867 (1977) (citing *Mendoza–Martinez,* 372 U.S. at 168–69, 83 S.Ct. at 567–68).

In *Gardner, supra,* the Sixth Circuit also concluded that for an act to be a bill of attainder it must inflict punishment, and that the Columbus ordinance did not do so. 841 F.2d at 1278. We are persuaded by the Sixth Circuit's reasoning, and therefore hold that because the penalties at issue are not punitive the Ordinance cannot be a bill of attainder.

Plaintiffs' contention that the Ordinance is an unconstitutional *ex post facto* law also fails under similar scrutiny. It is well-established that the *ex post facto* prohibition only applies to punitive legislation. *Id.* at 1280, (citing *Galvan v. Press,* 347 U.S. 522, 531 n. 4, 74 S.Ct. 737, 743 n. 4, 98 L.Ed. 911 (1954)). "The *ex post facto* prohibition forbids the Congress and the States to enact any law 'which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed.'" *Weaver v. Graham,* 450 U.S. 24, 28, 101 S.Ct. 960, 964, 67 L.Ed.2d 17 (1981) (quoting *Cummings v. Missouri,* 4 Wall. 277, 325–26, 18 L.Ed. 356 (1867)) (footnote omitted). In *Weaver,* the Supreme Court also noted, "no *ex post facto*

violation occurs if the change effected is merely procedural, and does 'not increase the punishment nor change the ingredients of the offense or the ultimate facts necessary to establish guilt.'" *Id.* 450 U.S. at 29 n. 12, 101 S.Ct. at 964 n. 12 (quoting *Hopt v. Utah,* 110 U.S. 574, 590, 4 S.Ct. 202, 210, 28 L.Ed. 262 (1884)).

In the light of the Sixth Circuit's persuasive analysis in *Gardner,* we find that the *ex post facto* prohibition does not apply to the new Philadelphia regime because the penalties the Ordinance imposes are regulatory and not punitive in nature.

### B. *Procedural Due Process*

For the plaintiffs' due process claim to reach constitutional dimensions and be cognizable under § 1983, they must prove that (1) the defendant acted under color of state law; (2) plaintiffs were deprived of constitutionally-protected property because of the defendant's actions; (3) the deprivation occurred without due process of law; and (4) plaintiffs suffered injury as a result of the deprivation without due process. *Sample v. Diecks,* 885 F.2d 1099, 1113 (3d Cir.1989); *see also Parratt v. Taylor,* 451 U.S. 527, 536–37, 101 S.Ct. 1908, 1913–14, 68 L.Ed.2d 420 (1981). Since the City understandably does not dispute that it acted under color of state law, we will only address the second and third elements of this test.

### 1. *Deprivation of a Property Right*

■ The second inquiry under the three-prong test requires us to consider whether the City's demand for money is a deprivation of a protected property interest within the meaning of the Fourteenth Amendment. We find it is.

Citing *Monell v. Dept. of Social Serv. of City of New York,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the City argues, "to establish a claim for violation of the Plaintiffs' due process rights, a municipal *policy of deliberate indifference* must be established" (Defendants' Memorandum of Law in Support of Motion for Summary Judgment at p. 32) (emphasis in original). Since plaintiffs have not argued that City Council passed the Ordinance with deliberate indif-

ference to their constitutional rights, the City concludes that plaintiffs' due process challenge must necessarily fail.[9]

■ The City fails to recognize an important distinction. To violate due process, it need not specifically intend to violate a person's constitutional right; rather, it must deliberately—and not accidentally—do an act that violates a person's constitutional right. Whether particular City Council members passed the Ordinance with actual consciousness that it violated due process is irrelevant. In *Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986), the Supreme Court discussed its holding in *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) (depriving an inmate of good time credit without the necessary procedural protections violated the due process clause), which is instructive on this point. The Court stated, "We think the relevant action of the prison officials in that situation is their deliberate decision to deprive the inmate of good-time credit, not their hypothetically negligent failure to accord him the procedural protections of the Due Process Clause." *Daniels,* 474 U.S. at 333–34, 106 S.Ct. at 666. Similarly, in the case at bar, the pertinent governmental action is the deliberate decision to pass the Ordinance and collect fines, not, as the City suggests, the hypothesized negligent failure to provide procedural due process.

In *Daniels,* the Supreme Court considered what constitutes a "deprivation" for purposes of a due process claim. The Court held that "the Due Process Clause is simply not implicated by a *negligent* act of an official causing unintended loss of or injury to life, liberty, or property." *Id.* at 328, 106 S.Ct. at 663 (emphasis in original). The Court went on, how-

ever, to make clear that *"deliberate* decisions of government officials to deprive a person of life, liberty, or property," *id.* at 331, 106 S.Ct. at 665 (emphasis in original), *are* subject to due process constraints.

■ The case here unquestionably involves an established governmental procedure, something that is an intentional, affirmative act. The City deliberately demanded monies from parking violators or entered judgment against them. The property right involved is the right to keep money unless the government takes it through actions that comport with due process. If the state does not have a legitimate claim to a person's money and, nevertheless, under color of state law demands or receives payment, its conduct amounts to a constitutional deprivation.[10]

### 2. *What Process is Due?*

■ As courts have frequently emphasized, due process is a flexible concept and its protections vary according to the demands of a particular set of circumstances. *See Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972). A minimal part of due process is adequate notice: "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950). Pertinent to the present controversy, "[a] decision made 'with blinders on', based on misinformation or a lack of information, cannot be binding as a matter of fundamental

9. We are perplexed by the City's reliance on *Monell* since the City's reading of it is irreconcilable with the following language of that opinion:

> Local governing bodies, therefore, can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where, as here, the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers. *Monell,* 436 U.S. at 690, 98 S.Ct. at 2035–36 (footnote omitted).

We do not understand how *Monell* can be read as extending an invitation to federal courts to plumb the minds of state legislative actors.

10. Though Mr. O'Neill never paid his fine, by virtue of the City's deliberate actions a judgment exists against him for money, a surely constitutionally-cognizable event. *D.H. Overmyer Co., Inc., of Ohio v. Frick Co.,* 405 U.S. 174, 185–187, 92 S.Ct. 775, 782–783, 31 L.Ed.2d 124 (1972); *see also Girard Trust Bank v. Martin,* 557 F.2d 386, 389 (3d Cir.), *cert. denied* 434 U.S. 985, 98 S.Ct. 612, 54 L.Ed.2d 479 (1977).

fairness and due process." *Covington v. Dept. of Health & Human Serv.*, 750 F.2d 937, 943 (D.C.Cir.1984).

Plaintiffs do not contest the validity of the Ordinance as it applies to people who received parking tickets after June 1, 1989, the effective date of the Ordinance. Rather, they raise several due process challenges to the Ordinance as the Director of Finance applied it to O'Neill and Goodman, parking violators who received tickets before June 1, 1989.

Plaintiffs contend that the "Violation Warning Notice" (Exhibit 4) the BAA sent to both of them in November of 1989 is insufficient to meet the requirements of due process.[11] Specifically, plaintiffs argue that the notice did not inform them that the BAA would consider failure to make an election between it and the Traffic Court as an automatic consent to the BAA's jurisdiction. Thus, they argue that any action or inaction based upon such an imperfect notice could not constitute a knowing, intelligent, and voluntary waiver of their due process rights.

The City counters that it did not, through its notices, involuntarily deprive Goodman and O'Neill of any right they may have had to appear before the Traffic Court on their pre-June 1, 1989 tickets. The City justifies the sufficiency of the "Violation Warning Notice" and the "Order of Default" only by noting that the plaintiffs chose to appear at the BAA and that the notices "adequately apprised the plaintiff [*sic*] of their [*sic*] rights; and did not imply that a judgment had *already* been entered against them" (Response of City Defendants to Plaintiffs' Motion for Summary Judgment p. 6) (emphasis in original).

We must begin with careful scrutiny of the "Violation Warning Notice" itself. The operative portion of the notice reads in its entirety:

You have ignored numerous notices previously mailed to you regarding the unpaid and uncontested parking violations listed

below. We will continue to pursue this matter until these violations are contested or paid in full.

In accordance with Chapter 12–2800 of the Philadelphia Traffic Code, for tickets previously filed with the Traffic Court, you may elect to request a hearing before the Philadelphia Traffic Court, as a Criminal matter, or before the Director of Finance's Bureau of Administrative Adjudication as a civil matter. To request a hearing before the Bureau of Administrative Adjudication, write to the P.V.B., P.O. Box 13850, Phila., PA, 19101. Hearings before the Traffic Court should be requested at 800 N. Broad Street, Phila., PA 19130. Be sure to include your name/address, tickets [*sic*] number(s), and license plate number.

Give this matter your prompt attention to avoid further legal action, including the chance that further violations could lead to BOOTING or TOWING of your vehicle.[12]

The City contends that this disclosure satisfies due process, and that any appearance before the BAA after its receipt constituted irrevocable consent to all aspects of the new regime.

To effect a waiver of a constitutional right, it is well-settled that the waiver must be voluntary, knowing, and intelligent. *Faretta v. California*, 422 U.S. 806, 835, 95 S.Ct. 2525, 2541, 45 L.Ed.2d 562 (1975); *Johnson v. Zerbst*, 304 U.S. 458, 468–69, 58 S.Ct. 1019, 1025, 82 L.Ed. 1461 (1938). Moreover, as the Supreme Court stated in words that are now part of our basic constitutional vocabulary, "waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege," *Johnson*, 304 U.S. at 464, 58 S.Ct. at 1023. The Supreme Court has instructed courts to " 'indulge every reasonable presumption against waiver' of fundamental constitutional rights and ... '[not to] presume acquiescence in the loss'" of such rights. *Id.* (quoting *Aetna Ins. Co. v. Kennedy*, 301 U.S. 389, 393, 57 S.Ct. 809, 811, 81

**11.** Plaintiffs raise several due process challenges to the City's actions. Because we find the "Violation Warning Notice" violates due process, it is unnecessary for us to consider these other challenges.

**12.** It is unnecessary to our analysis to consider the language of the Order of Default because it does not relate to the election referred to in the Violation Warning Notice.

L.Ed. 1177 (1931)); *Glasser v. United States*, 315 U.S. 60, 70–71, 62 S.Ct. 457, 465, 86 L.Ed. 680 (1942). While the Supreme Court has never defined precisely what constitutes a voluntary, knowing, intelligent waiver, the Court has stated that whether a person has waived a constitutional right "depends in each case 'upon the particular facts and circumstances surrounding that case, including the background, experience and conduct'" of the waiving party. *Edwards v. Arizona*, 451 U.S. 477, 482, 101 S.Ct. 1880, 1883, 68 L.Ed.2d 378 (quoting *Johnson*, 304 U.S. at 464, 58 S.Ct. at 1023) (criminal context).

We do not quarrel with the City's power to require pre-June 1, 1989, parking violators to make an election between the Traffic Court and the BAA. Nor do we believe that due process required the City to make an exhaustive disclosure of all the rights affected by such an election. Due process in such a context does not demand the breadth of disclosure required for a new public issue of securities. At a minimum, however, due process does require that the City inform notice recipients of the consequences of inaction. Nowhere does the notice inform its recipient that not making the election would automatically place the individual forever in the BAA's jurisdiction, and yet that is precisely what happened to Goodman and O'Neill.

Neither made the election, but unbeknownst to each the BAA took their silence to be irrevocable consent to its jurisdiction. In Goodman's case, he requested a BAA hearing for a ticket issued in February 1991. To his dismay he discovered that the BAA would also include tickets issued before June 1, 1989 in the proceeding because he never responded to the "Violation Warning Notice."

In O'Neill's case, he requested a hearing before the Traffic Court in April of 1991, but that court informed him that it no longer heard parking violation cases. O'Neill's only option was to appear before the BAA, a fate that he had unwittingly consented to when he did not respond to the "Violation Warning Notice." Thus, it cannot be said that either plaintiff made a voluntary, knowing and intelligent waiver of his right to a hearing before the Traffic Court under the old regime.

■ Relying on *Parratt, supra*, 451 U.S. at 527, 101 S.Ct. at 1908, the City contends that even if the "Violation Warning Notice" violated due process, it provided sufficient postdeprivation remedies to Goodman and O'Neill to meet the requirements of due process. The only postdeprivation remedy the City points to is the right Goodman and O'Neill had to appeal the decision of the BAA's Hearing Examiner to the Parking Appeals Panel, and then, if desired, to the Court of Common Pleas (*see* Defendant's Memorandum of Law in Support of Motion for Summary Judgment at p. 13).[13] We are not persuaded that these remedies cure the material omission in the notice.

This putative postdeprivation remedy does not speak to the inadequacies of the "Violation Warning Notice" that we have identified. It does not redress the City's failure to inform Goodman and O'Neill that their silence regarding whether they wanted to proceed in the BAA or the Traffic Court would be construed as irrevocable consent to the BAA's open-ended jurisdiction. The right Goodman and O'Neill had to appeal the Hearing Examiner's decision does not restore the rights they had, and unwittingly forfeited, to appear

---

**13.** There is one other procedure the BAA employs that, although the City did not cite it as such, could be argued to be a postdeprivation remedy. When a person appears before a BAA Hearing Examiner, he or she can request that a particular ticket not be made a part of the proceeding. When this occurs, it is entered into the computer data base as a "Disposition 41", meaning it is "not in the case" (Exhibit B, Dominic Ceremeli Deposition at pp. 105–06). Whether the City had yet invented a code–41 disposition at the time of Goodman and O'Neill's hearings is a point of contention between the parties. Its existence, however, is inconsequential as a cure for the deficiency in the "Violation Warning No-

tice" that we have discussed above. Even assuming Goodman and O'Neill could have requested a code–41, at the time of both of their hearings the Traffic Court no longer adjudicated parking violation cases. Therefore, requesting that the Hearing Examiner keep their pre-June 1, 1989 tickets out of the BAA proceeding would not have permitted Goodman and O'Neill to avail themselves of their right to a Traffic Court hearing, a right they lost without any notice whatever. Moreover, a code–41 would do nothing to cure the unconsented-to loss of a two-year limitations period and imposition of no limitations period.

before the Traffic Court and benefit from the existence of a limitations period.

## C. Relief

██ Because we find that a procedural due process violation has occurred, we must fashion a remedy. In this regard, we will take a page from the Seventh Circuit which has instructed that when a court finds a due process violation it "should fashion a remedy that is consistent with the principle that due process is a flexible concept whose procedural protections depend on the peculiar circumstances of each case." *Perry v. F.B.I.*, 759 F.2d 1271, 1281 (7th Cir.1985) (citing *Morrissey, supra*, 408 U.S. at 481, 92 S.Ct. at 2600), rev'd on reh'g en banc on other grounds, 781 F.2d 1294 (7th Cir.1986).

In this case Goodman and O'Neill were unconstitutionally deprived of their right to appear before the Traffic Court rather than the BAA on tickets issued before June 1, 1989. The question now becomes, what harm resulted from this deprivation? Throughout their memoranda plaintiffs seem to suggest that the BAA proceeding denied Goodman and O'Neill of three rights that they would have had in Traffic Court: (1) the requirement that a disposition could only be made in Traffic Court if the defendant appeared in person; (2) guilt was required to be proved beyond a reasonable doubt rather than by a preponderance of the evidence in a BAA proceeding; and (3) the availability of a statute of limitations defense for all tickets more than two years old at the time of the Traffic Court proceeding.

We are not impressed by the first two harms that plaintiffs articulate. While it is true that the Traffic Court rules required a personal appearance and proof of guilt beyond a reasonable doubt before the Traffic

Court could impose liability, it is also true that the Traffic Court had criminal sanctions at its disposal. For example, the personal appearance requirement was logical given that the Traffic Court had the power to issue bench warrants for the arrest of parking violators who failed to appear at their scheduled hearings. Moreover, the Traffic Court rules required proof of guilt beyond a reasonable doubt because the Traffic Court could impose imprisonment as punishment for a parking violator it found guilty. The BAA possesses no such powers over a violator's liberty. Goodman and O'Neill may have lost these protections, but they also did not face the sanctions a Traffic Court proceeding could have imposed on them. For these reasons, as for the first two injuries that plaintiffs identify, we find the harm of no moment and therefore not deserving of relief.

The lost statute of limitations defense presents a more vexing problem for the City. When the City issued the "Violation Warning Notice" in November of 1989, it contends that "not one of the tickets which are the subject matter of this lawsuit met the Statute of Limitation defense" (Response of City Defendants to Plaintiffs' Motion for Summary Judgment at p. 8). This statement, aside from being untrue,[14] is also irrelevant. To rehearse once again, the "Violation Warning Notice" did not inform plaintiffs that their failure to elect between the two forums would automatically and irrevocably place them in the BAA's jurisdiction. The City's defective notice deprived the plaintiffs, without their consent or knowledge, of the possibility of a Traffic Court proceeding with its attendant opportunity to avoid prosecution after two years. Thus, to the extent plaintiffs could have asserted the statute of limitations defense in a Traffic Court proceeding, the City has harmed them.[15]

---

**14.** Clearly Goodman's February 26, 1987 ticket met the statute of limitations defense and, perhaps, O'Neill's November 28, 1987 ticket did as well, depending on the exact date the City sent the "Violation Warning Notice".

**15.** The City cites *Commonwealth v. Quinn*, 405 Pa.Super. 487, 592 A.2d 1316 (1991), *appeal denied* 529 Pa. 619, 600 A.2d 535 (1991) for the proposition that a period of delay attributable to the accused tolls the statute of limitations. *Quinn* is distinguishable for at least two reasons.

First, until the Superior Court decided it on June 17, 1991, the rule in Pennsylvania was that failure to complete proceedings under 42 Pa.Con. Stat.Ann. § 5553(e) absolutely required discharge of the accused. *Commonwealth v. Jannenga*, 335 Pa.Super. 77, 81, 483 A.2d 963, 965 (1984). Second, in *Quinn* there was an adjudication of guilt within twenty-four days of the violation, but sentencing was delayed beyond two years because the defendant ultimately succeeded in perfecting an appeal *de novo nunc pro tunc*

The BAA assessed fines against Goodman totalling $247.00. Of that amount, $173.00 was for tickets issued before June 1, 1989, and that is the amount that the City should refund to Goodman because it was imposed by a tribunal which had not properly asserted jurisdiction over him and the former statute of limitations had expired as to all tickets by May 16, 1991. As for O'Neill, although he has not paid his fines, he does have a judgment against him for tickets issued before June 1, 1989, in the amount of $45.00. The City should vacate this liability.

Recalling that this action is also a test case to resolve the legal questions affecting as many as 2.7 million license holders who had unpaid tickets outstanding as of June 1, 1989, we must also fashion commensurate relief for people similarly situated to Messrs. Goodman and O'Neill. Although we will order the City and plaintiffs to submit their views on class-wide remedies, we recognize the potentially heavy financial burden such relief may add to a City whose resources are, to risk understatement, limited at this time. We will therefore stay this aspect of our Order for the later of thirty-one days or the date of final appellate review of our decision.

## IV. *Conclusion*

We have reluctantly reached the result we have explained in this memorandum. There is no small element of *chutzpah* on the part of both plaintiffs that is, in effect, rewarded by this outcome—they admit, after all, to having repeatedly ignored notices issued during the old regime. It is well to recall, however, that many constitutional victories have been won by parties considerably more odious than parking ticket scofflaws.

To the extent of the foregoing analysis, we shall grant plaintiffs' motion for summary judgment and deny defendant's. An appropriate Order follows.

## ORDER

AND NOW, this 29th day of March, 1993, upon consideration of plaintiffs' motion for summary judgment and defendant's response, and defendant's motion for summary judgment and plaintiffs' response, and for the reasons stated in the foregoing Memorandum, it is hereby ORDERED that the motions are GRANTED IN PART and DENIED IN PART in that:

1. With respect to Count I of plaintiffs' second amended complaint, defendant's motion is GRANTED and plaintiffs' motion is DENIED;

2. With respect to Count II of plaintiffs' second amended complaint, plaintiffs' motion is GRANTED to the extent of plaintiffs' due process claim and in all other respects defendant's motion is GRANTED and plaintiffs' motion is DENIED;

3. With respect to Count III and to the extent Count IV alleges defendants violated state law, plaintiffs' claims therein are deemed WITHDRAWN without prejudice;

4. With respect to the remaining aspects of Count IV, defendant's motion is GRANTED and plaintiffs' motion is DENIED;

5. With respect to Count V, defendant's motion is GRANTED and plaintiffs' motion is DENIED;

By reason of the foregoing, and as explained in the foregoing Memorandum, it is FURTHER ORDERED that:

6. JUDGMENT IS ENTERED in favor of plaintiff Samuel Goodman and against defendant City of Philadelphia in the amount of $173.00;

7. JUDGMENT IS ENTERED in favor of plaintiff John O'Neill and against defendant City of Philadelphia, and the City is directed to vacate its judgment against O'Neill of $45.00;

8. As for relief to people similarly situated to plaintiffs, the City and plaintiffs shall within thirty days submit memoranda re-

---

notwithstanding his failure to appeal within thirty days of the initial finding of guilt. Here, no one seriously suggests that *Quinn* would be applied retroactively to violations as far back as 1987, and by the date *Quinn* became final all of the subject tickets here had become unenforceable under the old regime. It is also undisputed that no tribunal at any level found either Goodman or O'Neill guilty before June 1, 1989.

garding their views as to the appropriate form(s) of relief and the procedure to be adopted by the Bureau of Administrative Adjudication to enable such persons to avail themselves of the benefits conferred by reason of the foregoing Memorandum;

9. Plaintiffs are prevailing parties within the meaning of 42 U.S.C. § 1988 and *Farrar v. Hobby,* —— U.S. ——, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992);

10. Paragraph 8 hereof is STAYED until the later of thirty-one days from the date of entry of this Order or final appellate review of this Order; and

11. With respect to paragraph 9 hereof, plaintiffs' counsel shall submit their application for an allowance of interim fees and expenses thirty days after the expiration of the stay referred to in the preceding paragraph unless this Order shall become ineffective by virtue of appellate action.