OPINION OF THE COURT
GARTH, Circuit Judge:
This appeal requires us to determine whether the federal courts must entertain a constitutional challenge to the City of Philadelphia’s parking ticket procedures — procedures that resulted in the imposition of a $45 fine against plaintiff-appellee John O’Neill, which remains unpaid, and a $173 fine against plaintiff-appellee Samuel Goodman, which was paid. We hold that the district court should have exercised its discretion to abstain, rather than to decide the constitutionality of Philadelphia’s ticketing procedures. Thus, we will vacate the district court’s judgment and remand with instructions that the district court dismiss the plaintiffs’ complaint.
I
John O’Neill (“O’Neill”) and Samuel Goodman (“Goodman”) brought suit in federal district court against the City of Philadelphia, the Philadelphia Parking Authority, the Office of the Director of Finance, and the Bureau of Administrative Office of Adjudication (collectively, the “City”), alleging that the City’s reorganization of its system for adjudicating parking tickets violated their constitutional rights, and the constitutional rights of similarly situated plaintiffs. On March 29, 1993, the district court granted summary judgment in favor of the plaintiffs on their due process claim, vacating the City’s $45 fine against O’Neill, and entering judgment in the amount of $173 in favor of Goodman. O’Neill v. City of Philadelphia, 817 F.Supp. 558 (E.D.Pa.1993).
Athough the district court declined the City’s invitation to abstain from exercising jurisdiction over this action, id. at 562 n. 8, and despite the City’s failure to protest the district court’s abstention determination on appeal, we asked the parties to submit supplemental briefs addressing the question of whether the district court properly should have abstained from entertaining the plaintiffs’ claims under the abstention doctrine announced by the Supreme Court in Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and its progeny.[1]
*787 We conclude that the district court abused its discretion in refusing to abstain under Younger and in reaching the merits of O’Neill and Goodman’s due process claim.
II
A.
Prior to June 1,1989, the “Traffic Court of Philadelphia” had original jurisdiction to adjudicate parking violations committed in the City of Philadelphia. 42 Pa.Cons.Stat.Ann. §§ 1302 and 1321. Appeals from the traffic court’s decisions were heard by the Pennsylvania Court of Common Pleas.
In 1989, the Philadelphia City Council reorganized the City’s system for adjudicating parking tickets by enacting an ordinance which authorized the Office of the Director of Finance to assume control over the regulation and disposition of parking violations in the City of Philadelphia. 12 Phila. City Code § 12-2802(1). Under the new framework, a parking ticket is affixed to the vehicle, id. § 12-2804(3), and the owner of the ticketed vehicle is sent a notice by first class mail. Id. § 12-2805(1). The person to whom the ticket is issued has fifteen days to answer it, either admitting the violation by payment of the fines, costs, and fees, admitting with explanation, or denying liability and requesting a hearing. Id. § 12-2806(1). A failure to answer or to pay the fine will result in a Bureau of Administrative Adjudication (“BAA”)[2] hearing examiner’s entering an order by default sustaining the charges, fixing the appropriate fine, and assessing appropriate costs and fees. Id. § 12-2807(3).
When the violation is contested, and a hearing is requested, a BAA hearing examiner holds a hearing and determines whether the charges have been established. Id. § 12-2807. Once the hearing examiner has entered his decision, the violator has thirty days to file an appeal to the BAA Parking Appeals Panel. Id. § 12-2808. The BAA’s decision, or a default by the ticket holder, creates a debt owed to the City. Id. § 12-2808(5). The decision of the Parking Appeals Panel can be appealed to the Pennsylvania Court of Common Pleas, and through the state judicial system. 2 Pa.Cons.Stat. Ann. § 752.[3]
The effect of the 1989 reorganization was to change the nature of parking violations from summary offenses, which were criminal in nature, to civil violations. In practice, a defendant before the traffic court was entitled to three rights not available at a BAA hearing: (1) a disposition could not be made without the personal appearance of the defendant, (2) the defendant’s guilt had to be proved beyond a reasonable doubt, and (3) the two-year statute of limitations for summary offenses was in effect.[4]
Finally, the new ordinance created a period of dual jurisdiction during which a person who had received a parking ticket, citation, or traffic court summons between October 2, 1987 and May 31, 1989, could choose to proceed either in traffic court or before the BAA. 12 Phila. City Code § 12-2807(8).
*788 B.
O’Neill and Goodman had received parking tickets both before and after the effective date of the 1989 ordinance.[5] Neither paid their fines. Neither responded to the summons and periodic payment-notices which were sent to them. In particular, neither answered “Violation Warning Notice[s]” sent in November 1989 by the Office of the Director of Finance explaining that they could elect to appear before the traffic court or the BAA for the purpose of contesting their outstanding tickets. Nor did they respond to “Order[s] of Default” informing them that their failure to pay the fines could result in the City’s taking further legal action which might have an adverse effect on their property rights.[6]
On March 4, 1991, Goodman requested a hearing before the BAA to contest a ticket he had received on February 4,1991. The hearing examiner held such a hearing on March 18, 1991, at which it assumed jurisdiction over the February 4 ticket, and nine additional tickets for which Goodman was responsible. Five of the tickets dated from before June 1, 1989. Five dated from after June 1, 1989.
Goodman objected that the BAA lacked jurisdiction to determine his liability on the pre-June 1, 1989 tickets, and that, in any event, he had the right to raise the statute of limitations as a defense in the BAA proceeding. The hearing examiner overruled Goodman’s objections and assessed total fines of $173.00 for the pre-June 1, 1989 tickets, and $74.10 for the post-June 1, 1989 tickets. Goodman paid his fines.[7]
In April 1991, O’Neill attempted to list for disposition with the traffic court three pre-June 1, 1989 parking tickets. The traffic court informed him that it no longer heard parking violation cases. O’Neill then requested a hearing with the BAA at which he raised the same objections as Goodman. On August 30, 1991, the BAA hearing examiner rejected O’Neill’s objections but reduced his liability for the outstanding parking tickets to $45.00. O’Neill has not paid his fine.
On October 30, 1991, O’Neill and Goodman filed a five-count complaint (later amended) against the City of Philadelphia, pursuant to 42 U.S.C. § 1983, alleging that the City had violated their constitutional and state-law rights by denying them a hearing before the traffic court with respect to the parking tickets they had received prior to June 1, 1989.[8] *789 On October 15,1992, the district court denied the plaintiffs’ motion for class certification but agreed to consider the action as a test case for persons similarly situated. The case was submitted on cross motions for summary judgment.[9]
On March 29, 1993, the district court granted the City’s motion for summary judgment as to four of the five constitutional claims alleged in the plaintiffs’ complaint.[10] With respect to the remaining count (“Count Two”), however, the district court held that the City’s failure to allow the plaintiffs to challenge their pre-June 1, 1989 tickets in traffic court, as opposed to the BAA, violated the plaintiffs’ due process rights. Consequently, the district court entered judgment in favor of Goodman in the amount of $173.00, and directed the City to vacate its outstanding $45.00 judgment against O’Neill.
The district court also ordered the parties to submit memoranda as to the appropriate terms of relief, and procedure to be adopted by the BAA, with respect to the 2,713,975 persons similarly situated to O’Neill and Goodman (i.e., persons who had undisposed of parking violation summonses issued before June 1, 1989). Recognizing the potentially heavy financial burden such relief might place on the City’s resources, the district court stayed' this latter portion of its order pending appeal.
We have jurisdiction over the City’s appeal from the partial grant of summary judgment in favor of O’Neill and Goodman pursuant to 28 U.S.C. § 1291.
Ill
The abstention doctrine first announced by the Supreme Court in Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), in the context of a pending state criminal prosecution, has since been extended to noncriminal state civil proceedings, Huffman v. Pursue, Ltd., 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975), and state administrative proceedings, Middlesex County Ethics Comm. v. Garden State Bar Ass’n, 457 U.S. 423, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982), in which important state interests are implicated, so long as the federal claimant has an opportunity to raise any constitutional claims before the administrative agency or in state-court judicial review of the agency’s determination. Ohio Civil Rights Comm’n v. Dayton Christian Sch., Inc., 477 U.S. 619, 629, 106 S.Ct. 2718, 2724, 91 L.Ed.2d 512 (1986).
In Middlesex, the Supreme Court delineated three requirements which must be satisfied before a federal court may abstain from hearing a case over which it has jurisdiction: (1) there must be pending or ongoing state proceedings which are judicial in nature; (2) the state proceedings must implicate important state interests; and (3) the state proceedings must afford an adequate opportunity to raise any constitutional issues. 457 U.S. at 432, 102 S.Ct. at 1146; Olde Discount Corp. v. Tupman, 1 F.3d 202, 211 (3d Cir.1993).[11]
*790 A.
“We exercise plenary review over the legal determinations of whether the requirements for abstention have been met. [Citations omitted.] Once we determine that the requirements have been met, we review a district court’s decision to abstain under Younger abstention principles for abuse of discretion.” Gwynedd Properties, Inc. v. Lower Gwynedd Township, 970 F.2d 1195, 1199 (3d Cir.1992).
1.
We need not belabor the question of whether a BAA proceeding is “judicial in nature.” Clearly, it is. See Williams v. Red Bank Bd. of Ed., 662 F.2d 1008, 1020-21 (3d Cir.1981).[12] The more compelling issue is whether, in the present ease, there is a “pending” state proceeding inasmuch as O’Neill and Goodman filed their federal lawsuit in lieu of appealing the hearing examiner’s determination, and in lieu of raising their constitutional claims in the state forum.
It is well-settled that, “[f]or Younger purposes, the State’s trial-and-appeals process is treated as a unitary system, and for a federal court to disrupt its integrity by intervening in midprocess would demonstrate a lack of respect for the State as sovereign.” New Orleans Pub. Serv., Inc. v. Council of City of New Orleans, 491 U.S. 350, 369, 109 S.Ct. 2506, 2519, 105 L.Ed.2d 298 (1989) (“NOPSI”). Thus, “a necessary concomitant of Younger is that a party [wishing to contest in federal court the judgment of a state judicial tribunal] must exhaust his state appellate remedies before seeking relief in the District Court.” Id., quoting Huffman v. Pursue, Ltd., 420 U.S. 592, 608, 95 S.Ct. 1200, 1210, 43 L.Ed.2d 482 (1975).
In contrast to Huffman, where the federal claimant had failed to appeal a state trial court judgment against it, here, O’Neill and Goodman have failed to seek state-court judicial review of an order entered in a state administrative proceeding. We are faced, then, with the question left unanswered by the Supreme. Court in NOPSI: whether a state proceeding is “pending,” and Younger abstention proper, where the adjudicatory process has become final as a result of the federal claimant’s failure to pursue state-court judicial review of an unfavorable state administrative determination? 491 U.S. at 369 & n. 4, 109 S.Ct. at 2519 & n. 4.
The Courts of Appeals have furnished contradictory answers to this question. Compare Thomas v. Texas State Bd. of Med. Exam., 807 F.2d 453, 456 (5th Cir.1987) (holding “mere availability of state judicial review of state administrative proceedings does not amount to the pendency of state judicial proceedings within the meaning of Younger”) with Alleghany Corp. v. Pomeroy, 898 F.2d 1314 (8th Cir.1990) (holding district court should have abstained where Alleghany had filed action in federal court instead of appealing state administrative decision to North Dakota state courts).
We have been given no reason why a litigant in a state administrative proceeding should be permitted to forego state-court judicial review of the agency’s decision in *791 order to apply for relief in federal court. Rather, we find the grounds offered by the Supreme Court to support its holding in Huffman — that state appellate review of a state court judgment must be exhausted before federal court intervention is permitted— are equally persuasive when considered with respect to state-court judicial review of a state administrative determination.[13]
First, federal intervention before a state court has had the opportunity to review an agency’s decision is no less an “aspersion on the capabilities and good-faith of state appellate courts,” and no “less a disruption of the State’s efforts to protect interests which it deems important,” 420 U.S. at 608, 95 S.Ct. at 1210, than the federal intervention with the state judicial appellate process explicitly condemned in Huffman. Second, federal intervention which would annul the results of an agency determination would deprive “the States of a function which quite legitimately is left to them,” i.e., the disposition of constitutional issues which arise in litigation over which they have jurisdiction. Id. at 609, 95 S.Ct. at 1210.
The requirement that litigants pursue state-court judicial review of state administrative decisions serves two additional purposes, identified by the Eighth Circuit in Pomeroy, which go to the very heart of the “comity” concerns upon which Younger abstention is grounded: (1) “the state courts may construe state law in a way which renders a constitutional decision unnecessary,” id., 898 F.2d at 1317, citing Pennzoil Co. v. Texaco, Inc., 481 U.S. 1, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987) (stating that an “important reason for abstention is to avoid unwarranted determination of federal constitutional questions”), and (2) “interests of comity are advanced, and friction reduced, if the courts of a state, rather than the federal courts, determine that the United States Constitution requires the state to alter its practices.” Pomeroy, 898 F.2d at 1318.
We therefore hold that state proceedings remain “pending,” within the meaning of Younger abstention, in cases such as the one before us, where a coercive administrative proceeding has been initiated by the State in a state forum, where adequate state-court judicial review of the administrative determination is available to the federal claimants, and where the claimants have chosen not to pursue their state-court judicial remedies, but have instead sought to invalidate the State’s judgment by filing a federal action.
2.
The second prong of the Middlesex test is whether the proceedings at issue implicate an important state interest. This factor goes to the very core of the raison d’etre of Younger abstention inasmuch as the Supreme Court’s holding in Younger rested primarily on considerations of “comity,” a concept which encompasses “a proper respect for state functions.” 401 U.S. at 44, 91 S.Ct. at 750.
Accordingly, “when we inquire into the substantiality of the State’s interest in its *792 proceedings we do not look narrowly to its interest in the outcome of the particular case — which could arguably be offset by a substantial federal interest in the opposite outcome. Rather, what we look to is the importance of the generic proceedings to the State.” NOPSI, 491 U.S. at 364-65, 109 S.Ct. at 2516-17.
It would well nigh be impossible to overstate the point that the federal courts have no interest whatsoever in the underlying subject matter of this litigation — the City of Philadelphia’s on-street parking regulations. In contrast, the City of Philadelphia has a vital and critical interest in the functioning of a regulatory system, such as the one at issue here, which is intimately associated with the physical and financial workings of the city in general, and of the municipal government in particular.
Prior Supreme Court decisions have held that the states have a substantial interest in enforcing criminal laws that bear a close relationship to criminal proceedings, Huffman, 420 U.S. at 604, 95 S.Ct. at 1208, in regulating attorney conduct, Middlesex, 457 U.S. at 434, 102 S.Ct. at 2522, in administering child custody proceedings, Moore v. Sims, 442 U.S. 415, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979), in preventing sex discrimination against employees, Dayton Christian Schools, 477 U.S. at 628, 106 S.Ct. at 2723, and in regulating intrastate utility rates. NOPSI, 491 U.S. at 365, 109 S.Ct. at 2516.[14]
We do not believe that we exaggerate the scope of these decisions in holding that the City of Philadelphia has a significant and substantial interest in the regulation of on-street parking, and in the vindication of the system it has implemented to adjudicate violations of those regulations.[15] The plaintiffs, in fact, have conceded as much in their supplemental brief. See Appellee’s Supp. Br. at 1 (“This case involves the regulation and administration of on-street parking which, of course, is an important interest to the State of Pennsylvania and the City of Philadelphia.”).
3.
The third prong of our inquiry is whether the claimant is afforded an adequate opportunity to raise his constitutional claims in the state forum. The Supreme Court has held that this third element is satisfied in the context of a state administrative proceeding when the federal claimant can assert his constitutional claims during state-court judicial review of the administrative determination. Dayton Christian Schools, 477 U.S. at 629, 106 S.Ct. at 2723; Middlesex, 457 U.S. at 436, 102 S.Ct. at 2523. Moreover, “when a litigant has not attempted to present his federal claims in related state-court proceedings, a federal court should assume that state procedures will afford an adequate remedy, in the absence of unambiguous authority to the contrary.” Pennzoil Co. v. Texaco, Inc., 481 U.S. at 15, 107 S.Ct. at 1528.
In the present case, neither O’Neill nor Goodman attempted to raise his federal claims in the state proceedings. Accordingly, we would be well-justified in assuming that, had they done so, they would have been *793 afforded an adequate remedy.[16] In any event, it is undisputed that O’Neill and Goodman could have raised their constitutional arguments before the administrative review board, again in the state-court appellate process, to and through the Pennsylvania Supreme Court, and, ultimately, before the United States Supreme Court. See 28 U.S.C. § 1257(a).[17]
B.
In sum, we hold that the three-prong test for Younger abstention is satisfied in the present case. The BAA proceeding was a judicial proceeding which may be deemed “pending” as a result of O’Neill’s and Goodman’s failure to take advantage of the appellate remedies which were available to them. The implementation of Philadelphia’s procedures for adjudicating parking tickets implicates important state (and not federal) interests. Lastly, O’Neill and Goodman could have asserted their constitutional claims in the state proceedings.
Anxious though we may be “to vindicate and protect federal rights and federal interests,” Younger, 401 U.S. at 44, 91 S.Ct. at 750, considerations of comity demand that we remain sensitive to the legitimate interests of the states. Since this case does not involve any of the extraordinary circumstances which would otherwise make abstention inappropriate, we hold that the district court abused its discretion in failing to abstain from hearing O’Neill and Goodman’s federal claims in deference to the overwhelming interest of the City of Philadelphia and the State of Pennsylvania with respect to their on-street parking regulations.
IV
Therefore, we will vacate the district court’s judgment of March 29, 1993, and remand this case to the district court with instructions to abstain under Younger v. Harris, and to dismiss the plaintiffs’ complaint.
Costs will be taxed against O’Neill and Goodman.

. Even though the question of Younger abstention was not raised by the parties on appeal, we may consider it sua sponte. Bellotti v. Baird, 428 U.S. 132, 143-44 n. 10, 96 S.Ct. 2857, 2864 n. 10, 49 L.Ed.2d 844 (1976); McLaughlin v. Pernsley, 876 F.2d 308, 314 n. 5 (3d Cir.1989); Blake v. Kline, 612 F.2d 718, 727 (3d Cir.1979). Cf. Winston v. Children and Youth Servs., 948 F.2d 1380, 1384-85 (3d Cir.1991) (declining to address question of abstention where defendants failed to preserve the issue for appellate review). But see id. at 1396-98 (Garth, J., dissenting) (citing cases holding that failure to file a cross appeal did not preclude Court of Appeals' consideration of particular issues).
In addition, we note somewhat surprisingly that we are not the first federal Court of Appeals to focus on the Younger problems that arise when parking tickets are challenged in § 1983 actions. In a case similar to the one before us on appeal, the Seventh Circuit decided that Younger abstention was appropriate where the federal claimant had initiated a federal action instead of contesting his numerous parking violations in the available state forum. Jacobson v. Village of Northbrook Mun. Corp., 824 F.2d 567 (7th Cir.1987). See also Horn v. City of Chicago, 860 F.2d 700, 702 n. 5 (7th Cir.1988) (reversing district court's holding that parking ticket demand notices issued by the City of Chicago violated the plaintiffs' due process rights and seriously questioning district court's conclusion that Younger abstention was not appropriate); Ballard v. Wilson, 856 F.2d 1568 (5th Cir.1988) (holding that Younger *787 precluded consideration of claims for injunctive and declaratory relief while state criminal prosecutions were pending against Ballard on his thirty-six violations of the City of Houston’s overtime parking ordinance); Friedman v. Beame, 558 F.2d 1107 (2d Cir.1977) (recognizing, but refusing to decide, Younger issue in action challenging City of New York’s parking regulations).

. Regulations adopted by the Director of Finance created the Bureau of Administrative Adjudication for the purpose of exercising the duties and powers enumerated in chapter 12-2800 of the Philadelphia City Code, the chapter added by the 1989 ordinance.

. Section 752 provides as follows: "Any person aggrieved by an adjudication of a local agency who has a direct interest in such adjudication shall have the right to appeal therefrom to the court vested with jurisdiction of such appeals by or pursuant to Title 42 (relating to judiciary and judicial procedure).”

.O'Neill and Goodman argue that they were unconstitutionally deprived of rights which were only available in traffic court. We know of no constitutional right, however, to a hearing before a tribunal of one's own choosing, see Crane v. Hahlo, 258 U.S. 142, 147, 42 S.Ct. 214, 216, 66 L.Ed. 514 (1922); Sill v. Pennsylvania State University, 462 F.2d 463, 469 (3d Cir.1972), or to assert a defense based upon a given statute of limitations. See Chase Securities Corp. v. Donaldson, 325 U.S. 304, 65 S.Ct. 1137, 89 L.Ed. 1628 (1945).

. The plaintiffs’ claims relate only to the retrospective application of the reorganized adjudicatory procedures to the parking tickets they received prior to June 1, 1989. The tickets which fall into this category were issued on the following dates:
Goodman O'Neill
May 16, 1989 May 1, 1989
December 7, 1988 October 10, 1988'
December 11, 1987 November 28, 1987
December 11, 1987
February 26, 1987

. While we need not reach the merits of the plaintiffs' constitutional claim, we note that at least one other Court of Appeals has held that individuals who have received, but purposefully ignored, timely and repeated notices alerting them of their right to a hearing at which they could contest parking violations, are in no position to argue that those notices deprived them of due process. See Saukstelis v. City of Chicago, 932 F.2d 1171 (7th Cir.1991) (holding car owner who ignored ten tickets, follow-up notices, and 21-day warning of eligibility for booting, could not insist that city violated his due process rights by putting "Denver Boot” on his car). Saukstel-is had been denied a preliminary injunction, giving rise to the appeal. Despite that posture of the case, the Seventh Circuit remanded with instructions "to enter judgment for the City without further ado.” Id. at 1174.

. Even though Goodman has paid his fines, a possible refund of those fines constitutes a collateral consequence sufficient to prevent mootness. Elkin v. Fauver, 969 F.2d 48, 53-54 n. 4 (3d Cir.1992); Nakell v. Attorney Gen., 15 F.3d 319, 322 (4th Cir.1994).

. Count One alleged that the City had violated the plaintiffs' due process rights by denying them the rights which had been available in traffic court.
Count Two alleged that the City had violated the plaintiffs' due process rights, and the Ex Post Facto clause of the United States Constitution, by failing to obtain the plaintiffs' consent to its jurisdiction, as required by the City ordinance, and by applying the laws and regulations governing hearings under the 1989 ordinance, and not those of the traffic court.
Count Three alleged that the City exceeded the authority granted under Pennsylvania law by unlawfully extending the BAA’s subject matter jurisdiction.
Count Four alleged that the BAA violated the U.S. and Pennsylvania Constitutions by holding *789 hearings on parking violations that were time barred under Pennsylvania law.
Count Five alleged § 12-2807(4) is an unconstitutional Bill of Attainder to the extent it subjects the plaintiffs’ vehicles to seizure without a hearing.

.The City argues that the district court lacked jurisdiction to hear the plaintiffs' claims. In particular, the City argues that because the plaintiffs did not appeal the hearing examiner's determination to the Parking Appeals Panel, under 12 Phila. City Code § 12-2808(5), the Finance Director's Office had not reached a final decision as to the plaintiffs' liability, and that, therefore, the plaintiffs’ federal suit was premature. We disagree. Section 12-2808(5) explicitly provides that “in the event that no appeal is taken [to the Parking Appeals Panel], the order of the Parking Hearing Examiner shall be the final order [of the Finance Director’s Office].”

. The plaintiffs-appellees have not appealed the district court's grant of summary judgment against them on the constitutional claims alleged in Counts One, Four, and Five, nor its grant of summary judgment with respect to the ex post facto allegations in Count Two. Because the plaintiffs did not press for summary judgment on the state claims alleged in Counts Three and Four of their complaint, the district court deemed them to have been withdrawn without prejudice. The district court's judgment is found in its entirety at O'Neill v. City of Philadelphia, 817 F.Supp. at 570-71.

. Even if these three elements are satisfied, abstention is not appropriate where the federal claimant makes a showing of bad faith, harassment, or some other extraordinary circumstance. Middlesex, 457 U.S. at 435, 102 S.Ct. at 2523. We note that, in the present case, no such extraordinary circumstances exist.

. Under 12 Phila. City Code § 12-2807, hearings must be conducted "in a fair and appropriate manner.” The defendant may call witnesses, supplement testimony by affidavits, and interpose legal arguments. While the technical rules of evidence do not apply, "all relevant evidence of reasonably probative value may be received.” Testimony must be given under oath. A record of the proceeding must be made. The hearing examiner is authorized to conduct extensive fact-finding and to compel the production of any document, paper, or record relevant to the violation charged. He must issue his decision based on the evidence and arguments offered.
Under 12 Phila. City Code § 12-2808(2), the Parking Appeals Panel:
shall have the power to review the facts and the law, and shall have power to affirm the determination or to reverse or modify any determination appealed from for error of fact or law, or to remand for additional proceedings, or, in appropriate cases, to hear the matter de novo.
See, e.g., Middlesex, 457 U.S. at 423, 102 S.Ct. at 2517 (holding state bar disciplinary proceedings judicial in nature where local attorney ethics committees act as an arm of the state supreme court in performing the function of receiving and investigating complaints and holding hearings). But see New Orleans Pub. Serv., Inc. v. Council of City of New Orleans, 491 U.S. 350, 369-73, 109 S.Ct. 2506, 2518-21, 105 L.Ed.2d 298 (1989) (holding ratemaking proceeding not judicial in nature because the setting of future utility rates essentially is a legislative act).

. We find no inconsistency between our holding and the principle that administrative remedies need not be exhausted prior to bringing a § 1983 action in federal court. Patsy v. Florida Bd. of Regents, 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982). As the Supreme Court stated in Dayton Christian Schools:
The application of Younger principles to pending state administrative proceedings is fully consistent with Patsy ..., which holds that litigants need not exhaust their administrative remedies prior to bringing a § 1983 suit in federal court. Cf. Huffman v. Pursue, Ltd., 420 U.S. 592, 607-11, 95 S.Ct. 1200, 1209-12, 43 L.Ed.2d 482 (1975). Unlike Patsy, the administrative proceedings here are coercive rather than remedial, began before any substantial advancement in the federal action took place, and involve an important state interest.
477 U.S. at 627-28 n. 2, 106 S.Ct. at 2723 n. 2. The critical distinction between Dayton Christian Schools and Patsy is that Patsy involved a remedial action brought by the plaintiff to vindicate a wrong which had been inflicted by the State. In contrast, Dayton Christian Schools involved an administrative proceedings initiated by the State, before a state forum, to enforce a violation of state law. That is, in Dayton Christian Schools, the action taken by the Ohio Civil Rights Commission was coercive rather than remedial, just as the action taken by the City of Philadelphia, to enforce its traffic tickets against O'Neill and Goodman, was coercive action which the plaintiffs sought to circumvent by filing their complaint in federal court.

. We have held that the states have a substantial interest in education, Williams v. Red Bank Bd. of Ed., 662 F.2d at 1017-18 (noting that state's interest in education is not weakened by the fact that, technically, local school boards press disciplinary charges against teachers, and not the State), and in regulating securities transactions. Olde Discount Corp. v. Tupman, 1 F.3d at 212. See also Mission Oaks Mobile Home Park v. City of Hollister, 989 F.2d 359, 361 (9th Cir.1993) (finding important state interest in regulating mobile home parks even though rental rates are regulated by local ordinance rather than statewide law); Federal Express Corp. v. Tennessee Pub. Serv. Comm'n, 925 F.2d 962, 969 (6th Cir.1991) (affirming district court’s finding important state interest in regulating intrastate trucking).

. The Supreme Court has recognized that "[t]he importance of the state interest may be demonstrated by the fact that the noncriminal proceedings has a close relationship to proceedings criminal in nature.” Middlesex, 457 U.S. at 432, 102 S.Ct. at 2521. Until May 31, 1989, of course, parking infractions in the City of Philadelphia were criminal offenses. Simply because parking violations are the least threatening of all motor vehicle violations — and are now civil offenses in the City of Philadelphia — does not mean that the State’s overriding interest in enforcing its motor vehicle laws, many of which remain criminal in nature, has had its importance diluted.

. In Williams v. Red Bank Bd. of Ed., 662 F.2d 1008 (3d Cir.1981), we held that a federal claimant is afforded an opportunity to assert her constitutional claims in the state forum where an administrative board is authorized to dismiss the charges against the claimant. In this respect, we note that the BAA Parking Appeals Panel is authorized "to review the facts and the law, and shall have the power to affirm the [hearing examiner’s] determination or to reverse or modify any determination appealed from for error of fact or law, or to remand for additional proceedings, or, in appropriate cases, to hear the matter de novo.” 12 Phila. City Code § 12-2808(2).

. 28 U.S.C. § 1257 provides in relevant part as follows:
(a) Final judgments or decrees rendered by the highest court of a State in which a decision could be had, may be reviewed by the Supreme Court by writ of certiorari where ... the validity of a statute of any State is drawn in question on the ground of its being repugnant to the Constitution, treaties, or laws of the United States, or where any title, right, privilege, or immunity is specially set up or claimed under the Constitution....