841 F.2d 1272
 William GARDNER; Kenneth A. Bauman; Foggy Daze
International, Inc. and Others Similarly Situated,
Plaintiffs-Appellants,
v.
CITY OF COLUMBUS, OHIO; David J. Ort, City Treasurer; and
Anne E. White, Parking Violations Bureau Clerk,
Defendants-Appellees.
 No. 87-3302.
 United States Court of Appeals,
Sixth Circuit.
 Argued Jan. 28, 1988.
Decided March 14, 1988.
 
 George C. Rogers (argued), Rogers & Godbey Co., LPA, Toledo, Ohio, for plaintiffs-appellants.
 Robert B. Levering, Asst. City Atty., Ronald J. O'Brien, City Atty. (argued), Columbus, Ohio, for defendants-appellees.
 Before MILBURN and GUY, Circuit Judges, and CONTIE, Senior Circuit Judge.
 CONTIE, Senior Circuit Judge.
 
 
 1
 Appellants, William Gardner, Kenneth Bauman, Jim Brady and Foggy Daze International, Inc., appeal from the judgment of the district court in favor of the City of Columbus, the city treasurer, and the clerk of the Parking Violations Bureau (PVB)[1] in their suit challenging the constitutionality of Chapter 2150 of the Columbus City Code.[2] For the following reasons, we affirm the judgment of the district court.
 
 I.
 
 2
 The facts in this case were not in dispute. The parties submitted agreed stipulated facts and exhibits to the district court. The court then made the following findings.
 
 
 3
 Prior to March 1, 1983, the City of Columbus enforced its parking regulations through the use of criminal penalties. Individuals who violated city parking regulations faced criminal minor misdemeanor charges, adjudication of which was made by the Franklin County Municipal Court.
 
 
 4
 On January 1, 1983, Chapter 4521 and Sec. 4511.07 of the Ohio Revised Code became effective. Those statutory provisions authorized municipalities and local authorities to enact ordinances, resolutions, or regulations for the standing and parking of vehicles which treat violations of such ordinances in a non-criminal manner. If such ordinances are enacted, the legislation provides a framework for enforcement of the regulations. Local authorities are authorized to establish fines for violations and penalties for failure to timely answer the charges. Such ordinances must specify that any violation thereof "shall not be considered a criminal offense for any purpose." Ohio Rev.Code Ann. Sec. 4521.02(A) (Page 1982). The maximum fines and penalties imposed may not exceed one hundred dollars plus costs and administrative charges.
 
 
 5
 In response to the state legislation, the City of Columbus enacted Chapter 2150 of the Columbus City Code, which became effective on March 1, 1983. The Code abolished criminal penalties for parking violations and set forth civil monetary penalties for parking infractions. Chapter 2150 created the PVB, a subdivision of the City Treasurer's office, to enforce city parking ordinances in a non-criminal manner. Columbus City Code Sec. 2150.04. The PVB is not a court, its hearing officers are not judges, and its clerk is not a clerk of court. The PVB operates within the procedural framework established by Chapter 4521 of the Ohio Revised Code and Chapter 2150 of the Columbus City Code.
 
 
 6
 Since its creation in March 1983, the clerk of the PVB has enforced Columbus parking ordinances by making administrative determinations and assessing and collecting civil penalties, fees, and costs for parking violations. The PVB makes assessments not only for infractions committed subsequent to March 1, 1983, but also for infractions committed up to three years prior to that date. In enforcing parking violations, it follows the procedures set forth in the following paragraphs.
 
 
 7
 The enforcement of parking regulations is initiated when a Columbus Police Officer or a Parking Ticket Attendant observes a parking violation. The officer or attendant issues a parking ticket setting forth the infraction, make and license number of the vehicle, as well as the time, date, and location of the infraction. The ticket has three copies. One copy is given to the operator of the vehicle or is affixed to the vehicle in a conspicuous place. One copy of the ticket is maintained in the records of the PVB. The original copy is used to record the information on a computer tape and is returned to the PVB. The computer tapes are sent to Datacom, which provides notice and data services to the city.
 
 
 8
 If the owner or operator does not pay the fine specified or otherwise answer within ten days of the issuance of the ticket, a two dollar penalty is assessed. Approximately six weeks later, Datacom mails a notification of infraction to the last known address of the owner or operator, which is obtained from the Ohio Bureau of Motor Vehicles. The notification contains the following statements:
 
 
 9
 The records of the parking administrator indicate that you have failed to respond to the parking ticket infraction issued to a vehicle registered in your name and as identified above. You must pay the total due, or deny the parking infraction: explain the circumstances of the parking infraction: and/or request a hearing in writing.
 
 
 10
 If you fail to answer or to appear at a hearing within 30 days a default judgment may be entered against you with all fines, penalties, fees and costs according to law.
 
 
 11
 You may pay in person by check, money order, Visa at the above address.
 
 
 12
 If the post office returns a notice as undeliverable, no further action is taken unless a new address is obtained.
 
 
 13
 If the fine and penalty are not paid or the individual does not otherwise answer within thirty days after the notification is mailed, an additional four dollar penalty is assessed. Datacom sends an impending judgment notice to the owner or operator which contains the following language:
 
 
 14
 Failure to timely answer the parking infraction(s) identified in this notification within 10 days may result in the imposition of an additional penalty for each parking infraction, and shall be considered an admission of guilt and a default judgment in the amount of the fine, penalties, fees and costs due may be entered against you in Franklin County Municipal Court. If you have 5 or more judgments unpaid against you, your vehicle may be eligible to be booted and/or towed. All according to the laws of the State of Ohio and section 2150.060 and 2150.028 of the 1983 Columbus City Code.
 
 
 15
 In the event that no response is forthcoming, the following final prejudment notice is sent:
 
 
 16
 Records of the Parking Violations Bureau indicate that you have ignored previous notice(s) of delinquent parking violations for a vehicle registered in your name, or failed to appear for a scheduled hearing. Unless you respond within ten (10) days of the date of this notice a civil judgement [sic] will be filed in Franklin County Municipal Court, and an additional $10.00 per ticket court cost will be added. No partial or time payments will be accepted.
 
 
 17
 An owner or operator of a ticketed vehicle may file an answer with the PVB at any time prior to the filing of a judgment with the Franklin County Municipal Court. The answer may admit the commission of an infraction with or without an explanation of the circumstances in mitigation, or may deny the commission of an infraction and request a hearing. If the infraction is admitted and the fine is paid, a receipt is issued and retained in the PVB's files. If an infraction is admitted and a written explanation is presented, the Clerk and designated employees review the explanation to determine if mitigation is warranted. The PVB may or may not reduce or eliminate the fines, and the individual is notified by mail of the determination. Its determination on mitigation and the amount of the fine is treated as if it were a judgment that had been rendered subsequent to a hearing. Columbus City Code Sec. 2150.05(B)(2).
 
 
 18
 If an individual denies the commission of a parking infraction, the PVB conducts a hearing in which licensed Ohio attorneys act as hearing officers.[3] The city has the burden of proving the commission of the offense by a preponderance of the evidence. Testimony is given under oath, and is not restricted by the rules of evidence. While the ticket is prima facie evidence of the infraction, the individual may request that its issuer attend the hearing. If the individual fails to appear, the hearing officer considers evidence presented by the city as well as any documentary evidence submitted by the individual prior to the hearing.
 
 
 19
 If the hearing officer determines that the city has sustained its burden of proof, he or she issues a written order indicating that a judgment has been taken, unless the individual fails to appear, in which case the hearing officer issues a default judgment. If the city fails to meet its burden of proof, a written dismissal of the charge is issued. The hearing officer may vacate an entry of default upon application if the application is filed within one year, sets forth a sufficient defense, and sets forth excusable neglect for failure to attend the hearing. Columbus City Code Sec. 2150.07(B)(5). An individual may appeal an adverse determination by a hearing officer or an adverse PVB determination regarding mitigation to the Franklin County Municipal Court. There is no further appeal from the court's decision.
 
 
 20
 In cases of all unpaid tickets which have been reviewed by a hearing officer, tickets upon which the PVB has denied mitigation, and tickets upon which a hearing officer has entered judgment or default judgment, the PVB may file those administrative judgments with the Clerk of the Municipal Court. At the time of filing such judgments, an additional ten dollar court cost fee is assessed. When such judgments are filed, they have the same force and effect as a money judgment in a civil action rendered by the court. The PVB began filing such judgments with the Clerk of Courts in March, 1985.
 
 
 21
 Once the judgments have been filed, measures may be taken to collect the judgments in the same manner as any money judgment rendered by the municipal court.
 
 
 22
 Appellants Brady, Foggy Daze International and Gardner received parking tickets in the City of Columbus and paid fines without requesting a hearing. Appellant Bauman received nine parking tickets between January 1, 1981 and November 4, 1982. The PVB sent Bauman two notices concerning these tickets. On November 16, 1983, Bauman requested a hearing, challenging the constitutionality of the ordinances and alleging that the fines were barred by the statute of limitations. The hearing officer upheld the violations. On December 27, 1983, Bauman filed a notice of appeal to the municipal court. Prior to the hearing on appeal, the parties settled the case and the action was dismissed. Bauman received four more parking tickets between July 1, 1983 and December 18, 1984. Two tickets were paid and two remain unpaid. Two notices had been sent regarding each of these tickets.
 
 
 23
 Appellants argue that Chapter 2150 is penal in nature, violates the prohibition against bills of attainder, violates the due process clause of the fourteenth amendment, is an ex post facto law, and is against public policy. Appellees, relying substantially on the district court's analysis, argue that Chapter 2150 is civil in nature, does not violate any constitutional provision, and is not against public policy. The district court held that Chapter 2150's penalties are civil sanctions and did not violate the Constitution.
 
 II.
 
 24
 As the basis for most of their constitutional arguments, appellants assert that Chapter 2150's fines and penalties are penal in nature. The appellees argue and the district court held that the sanctions of Chapter 2150 are civil sanctions based on the analysis of United States v. Ward, 448 U.S. 242, 100 S.Ct. 2636, 65 L.Ed.2d 742 (1980).
 
 
 25
 In Ward, the Court summarized the two level test for determining whether a penalty is civil or criminal, noting that the issue is one of statutory construction.
 
 
 26
 First, we have set out to determine whether [the legislature], in establishing the penalizing mechanism, intended either expressly or impliedly a preference for one label or another. Second, where [the legislature] has indicated an intention to establish a civil penalty, we have inquired further whether the statutory scheme was so punitive either in purpose or effect as to negate that intention.
 
 
 27
 Id. at 248-49, 100 S.Ct. at 2641 (citations omitted). In making the latter inquiry, "only the clearest proof could suffice to establish the unconstitutionality of a statute on such a ground." Id. at 249, 100 S.Ct. at 2641 (quoting Flemming v. Nestor, 363 U.S. 603, 617, 80 S.Ct. 1367, 1376, 4 L.Ed.2d 1435 (1960)). Finally, the Court found the seven considerations listed in Kennedy v. Mendoza-Martinez, 372 U.S. 144, 168-69, 83 S.Ct. 554, 568-69, 9 L.Ed.2d 644 (1963) useful in making the latter inquiry. The Court notes, however, that the list is neither exhaustive nor dispositive. Ward, 448 U.S. at 249, 100 S.Ct. at 2641. The standards set forth in Mendoza-Martinez were
 
 
 28
 [w]hether the sanction involves an affirmative disability or restraint, whether it has historically been regarded as a punishment, whether it comes into play only on a finding of scienter, whether its operation will promote the traditional aims of punishment--retribution and deterrence, whether the behavior to which it applies is already a crime, whether an alternative purpose to which it may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned....
 
 
 29
 Mendoza-Martinez, 372 U.S. at 168-69, 83 S.Ct. at 567-68 (footnotes omitted).
 
 
 30
 The district court found it "abundantly clear" that the Ohio legislature and the Columbus City Council intended penalties for parking infractions to be civil in nature. The court's conclusion is supported by Chapter 4521 of the Ohio Revised Code which is entitled "Local, Noncriminal Parking Infractions." Section 4521.02 speaks of any ordinances, resolution or regulation that regulates the standing or parking of vehicles. The section authorizes local authorities to "specify that a violation of the regulatory ordinance, resolution or regulation shall not be considered a criminal offense for any purpose [and] that a person who commits the violation shall not be arrested as a result of the commission of the violation." Ohio Rev.Code Ann. 4521.02(A) (Page 1982). Also, the Columbus City Code states that the commission of a parking infraction within the City of Columbus "shall not be considered a criminal offense for any purpose." Sec. 2150.02(A). Finally, no person may be arrested as the result of a parking infraction, Sec. 2150.03(F), and administrative judgments filed with the Clerk of the Municipal Court have the same force and effect as monetary judgments in civil actions rendered by the court, Sec. 2150.07(C). Based on the foregoing, we agree with the district court's conclusion that the legislature intended provisions of Chapter 2150 to be regulatory in character and its penalties civil in nature.
 
 
 31
 Having concluded that the state and the city had a manifest intent to consider the penalties for parking violations as civil penalties the court moved on to level two of the Ward analysis and applied the Mendoza-Martinez standards to Chapter 2150. After applying these standards, the court concluded that plaintiffs had not established by the "clearest proof" that the penalties are punitive either in purpose or effect.
 
 
 32
 Appellants argue that Chapter 2150's sanctions are penal in nature based on the application of the fifth and sixth factors of Mendoza-Martinez. They argue that the penalties are penal in nature because the same infractions are criminal offenses under state law, and because they have no relation to damages, harm or cost to the city.
 
 
 33
 Appellants' first argument is not supported by logic or law. As the district court noted, the fatal flaw in this argument is that the criminal sanctions have been imposed by an entirely separate jurisdiction. Furthermore, the Court in Ward made it clear that the fact that a legislature has imposed both a civil and a criminal sanction for the same act does not transform the civil penalty into a criminal penalty, particularly when the penalties are in different parts of a statute or are in separate statues. Ward, 448 U.S. at 250, 100 S.Ct. at 2642. Therefore, the fact that the same infractions are criminal offenses under state law does not transform these civil penalties into criminal penalties.
 
 
 34
 This court takes appellants' second assertion as a claim that there is no alternative purpose to which the sanction can be rationally connnected. The appellees, while conceding that deterrence is one aim, assert that "the other reason for the imposition of civil penalties for violations of parking regulations is to defray the cost of providing and regulating parking on city streets...." The district court found that the fines are civil sanctions which are imposed in the context of a comprehensive regulatory scheme. We agree with the district court's conclusion that the fines are part of a comprehensive regulatory scheme and are not punitive in nature.
 
 
 35
 Accordingly, we conclude that the district court was correct in its determination that the appellants have not offered the "clearest proof" that the fines here in question are punitive in purpose or effect so as to negate the intention of the City of Columbus that all such fines be civil penalties.
 
 
 36
 Appellants second argument is that Chapter 2150 is a bill of attainder because it imposes nonjudicial punishment.
 
 
 37
 A bill of attainder is "a legislative act which inflicts punishment on named individuals or members of an easily ascertainable group without a judicial trial." United States v. O'Brien, 391 U.S. 367, 383 n. 30, 88 S.Ct. 1673, 1682 n. 30, 20 L.Ed.2d 672 (1968). "The proscription against bills of attainder reaches only statutes that inflict punishment on the specified individual or group." Selective Serv. Sys. v. Minnesota Pub. Interest Group, 468 U.S. 841, 851, 104 S.Ct. 3348, 3354, 82 L.Ed.2d 632 (1984). In analyzing challenged legislation, the Court has applied a "functional test of the existence of punishment, analyzing whether the law under challenge, viewed in terms of the type and severity of burdens imposed, reasonably can be said to further nonpunitive legislative purposes." Nixon v. Administrator of Gen. Servs., 433 U.S. 425, 475-76, 97 S.Ct. 2777, 2806-07, 53 L.Ed.2d 867 (1977) (citing Mendoza-Martinez, 372 U.S. at 168-69, 83 S.Ct. at 567-68).
 
 
 38
 Since we agree with the district court's determination that the penalties at issue are not punitive, and since in order for an act to be a bill of attainder it must inflict punishment, Chapter 2150 is not a bill of attainder.
 
 
 39
 Appellants' third argument is that the following aspects of the Chapter 2150 system "when they are stacked upon each other" violate due process: the hearing officers are "partial, nonjudicial judgment renderers who are unsworn employees of one of the parties;" the hearing is administrative and not judicial; service is by ordinary mail rather than certified mail; the burden of proof is reduced to a preponderance of the evidence; the ticket is considered the complaint and is presumed to be true; the owner of the car is presumed to be the violator; and the rules of evidence are not applied.
 
 
 40
 Appellants' argument that the hearing officers are somehow biased employees of the city is countered by the stipulated fact that the hearing officers are "duly licensed Ohio attorneys appointed as hearing officers by the Columbus City Treasurer who are hired on an independent contractor basis" and the fact that the appellants made no showing of bias.
 
 
 41
 Appellants' contention that due process is violated by the fact that the penalties are determined by a nonjudicial body is not supported by law. In Atlas Roofing Co. v. Occupational Safety Commission, 430 U.S. 442, 97 S.Ct. 1261, 51 L.Ed.2d 464 (1977), the Court reiterated the proposition that when a legislature "creates new statutory 'public rights,' it may assign their adjudication to an administrative agency...." Id. at 455, 97 S.Ct. at 1269 (deciding that right to jury trial was not violated by Occupational Safety and Health Act of 1920, which assigned adjudication of contested citations to the Occupational Safety and Health Review Commission). In reaching its holding in Atlas Roofing, the Court relied in part on Oceanic Steam Navigation Company v. Stranahan, 214 U.S. 320, 29 S.Ct. 671, 53 L.Ed. 1013 (1909) for the proposition that in certain areas "Congress could 'impose appropriate obligations and sanction their enforcement by reasonable money penalties, giving to executive officers the power to enforce such penalties without the necessity of invoking the judicial power.' " Atlas Roofing, 430 U.S. at 457, 97 S.Ct. at 1270 (quoting Oceanic Navigation, 214 U.S. at 339, 29 S.Ct. at 676). Based on the foregoing, the provisions of Chapter 2150, which assign the adjudication of civil penalties relating to parking infractions on city property to an administrative body, do not violate due process. Appellants' contention is also countered by the fact that the regulatory scheme allows appeal of the administrative decision of the PVB to the Franklin County Municipal Court, thereby providing judicial review of an adverse administrative decision.
 
 
 42
 Appellants argue next that their due process right to notice is violated by the fact that service is by ordinary mail or by placing the ticket on the window of the car.
 
 
 43
 "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Mullane v. Central Hanover Trust Co., 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950); Lindsey v. Greene, 649 F.2d 425, 427-28 (6th Cir.1981), aff'd, 456 U.S. 444, 102 S.Ct. 1874, 72 L.Ed.2d 249 (1982). The city argues that the notice provided by Chapter 2150--affixing the ticket to the windshield and regular mail notice advising the owner of the infraction and implications of failure to answer--meets the standard set forth in Mullane. The city also notes "the limited amount at stake" in the proceeding and asserts that the cost of sending every notice by certified mail may cost more than the city collects from enforcing parking tickets. The district court found that the notice provisions of Chapter 2150 did not violate due process. The court took note of the following facts: no final administrative determination is made until three notices are sent by regular mail; if the notices are undeliverable because the owner has moved, no further action is taken; if steps are taken to collect any judgment, the owner can move to set aside the judgment if no notice is given.
 
 
 44
 Given the collective factors relied on by the court and the city, we conclude that the notice provided for by the ordinance, and the actual application of those notice provisions do not violate due process since it is reasonably calculated to apprise the parking violators of the pendency of the action.
 
 
 45
 Appellants' arguments concerning the burden of proof and the fact that the ticket is prima facie evidence of the facts it contains are also without merit.
 
 
 46
 In civil proceedings "there is no burden on the Government to prove its case beyond a reasonable doubt." Helvering v. Mitchell, 303 U.S. 391, 403, 58 S.Ct. 630, 635, 82 L.Ed. 917 (1938) (footnote omitted). Therefore, once it is determined that the Chapter 2150 proceedings are civil in nature, due process is not violated by lowering the Government's burden of proof.
 
 
 47
 Appellants' argument concerning the ordinance's declaration that the ticket is prima facie evidence of the facts stated therein is rebutted by the ordinance itself. As the district court noted, Sec. 2150.07 provides that,
 
 
 48
 [i]f the person in his answer, denied that he committed the parking infraction and requested the presence at the hearing of the law enforcement officer who issued the parking ticket, the officer shall be required to attend the hearing unless the hearing examiner determines that the officer's presence is not required.
 
 
 49
 Columbus City Code Sec. 2105.07. The fact that the person receiving a parking ticket can request that the ticket's issuer be present at the hearing ameliorates any possible harm caused by the use of the ticket as prima facie evidence.
 
 
 50
 Appellants' argument that the presumption that the automobile owner is the person committing the offense violates due process was addressed by the Ohio Supreme Court.
 
 
 51
 Unlike most motor-vehicle law violations, where the operator is apprehended at the time of the performance of the act, it is indeed the rare instance in which a police officer is in a position to apprehend the parking offender at the time of the violation. Most parking tickets are issued at a time when the operator is absent. Thus, under most circumstances, it is virtually impossible for a city to prove what person actually parked the vehicle; yet due to the hazards which arise from illegal parking it is imperative that such regulations be enforced.
 
 
 52
 City of Columbus v. Webster, 170 Ohio St. 327, 330, 164 N.E.2d 734 (1960). The district court "found itself in agreement" with the Ohio Supreme Court's determination that the presumption is constitutionally permissible. We likewise agree with this analysis.
 
 
 53
 Finally, appellants question the constitutionality of the ordinance on the ground that no rules of evidence are in force at hearings under Chapter 2150. "[I]t has long been established that the technical rules for the exclusion of evidence applicable to jury trials do not apply to proceedings before federal administrative agencies...." Opp Cotton Mills Inc. v. Administrator, 312 U.S. 126, 155, 61 S.Ct. 524, 537, 85 L.Ed. 624 (1941). See also, Illinois v. Interstate Commerce Comm'n, 722 F.2d 1341, 1349 (7th Cir.1983). The fact that the PVM is a state agency does not change the analysis. Furthermore, as the appellees aptly point out, there is sound policy for lessening the adherence to the rules of evidence. Since in most instances the violator will be self-represented due to the nature of the violation and the cost of retaining an attorney, it is very sensible to lower the technical standards for presenting evidence to facilitate the pro se party's presentation of his case.
 
 
 54
 None of the appellants' due process arguments standing alone withstands analysis. Appellants, however, are seemingly arguing that each of their alleged due process violations, when "stacked upon each other," deny them a meaningful opportunity to appear and defend and therefore, when taken in toto violate due process. The essence of this argument, however, appears to stem from the appellants' initial premise that anything less than a judicial hearing on the parking violation is violative of due process. Since this premise is not supported by law and since none of the appellants' individual complaints against the system violate due process, the only way one could hold that the system violates due process is by finding that the sum of appellants' arguments is greater than its parts. We do not feel that this is the case.
 
 
 55
 Appellants' fourth argument is that Chapter 2150 and sections 4521 et seq. are unconstitutional ex post facto laws. The basis of their claim is the legislation's change in the burden of proof and use of the rules of evidence for adjudication of violations which occurred up to three years prior to the legislation's enactment. Ohio Rev.Code Ann. Sec. 4521.08(E) (Page 1982); Columbus City Code Sec. 2150.07(E).
 
 
 56
 The district court, relying on Rochin v. California, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952), determined that since the challenged legislation was not punitive it could not be an unconstitutional ex post facto law because the ex post facto prohibition applies only to penal legislation. While we do not read Rochin to expressly stand for that proposition, the proposition that the ex post facto prohibition only applies to punitive legislation is well established. See Galvan v. Press, 347 U.S. 522, 531 n. 4, 74 S.Ct. 737, 743 n. 4, 98 L.Ed. 911 (1954).
 
 
 57
 "The ex post facto prohibition forbids the Congress and the States to enact any law 'which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed.' " Weaver v. Graham, 450 U.S. 24, 28, 101 S.Ct. 960, 964, 67 L.Ed.2d 17 (1981) (quoting Cummings v. Missouri, 4 Wall. 277, 325-26, 18 L.Ed. 356 (1867)) (footnote omitted). In Weaver, the court also noted that "no ex post facto violation occurs if the change effected is merely procedural, and does 'not increase the punishment nor change the ingredients of the offense or the ultimate facts necessary to establish guilt.' " Id. at 29 n. 12, 101 S.Ct. at 964 n. 12 (quoting Hopt v. Utah, 110 U.S. 574, 590, 4 S.Ct. 202, 210, 28 L.Ed. 262 (1884)). See also Dobbert v. Florida, 432 U.S. 282, 293, 97 S.Ct. 2290, 2298, 53 L.Ed.2d 344 (1977).
 
 
 58
 Since we conclude that the penalties imposed by Chapter 2150 are regulatory and not punitive in nature, the ex post facto prohibition is not applicable.
 
 
 59
 Finally, appellants make an argument that Chapter 2150 should be invalidated as against public policy. Their conjecture-filled argument is summed up in the following conclusion "[w]ithout an independent judicial agency ... the contact of these poor but honest citizens with the massive machinery of government is going to be a bitter demoralizing one." In rejecting this argument, the district court noted that the change in the Code was a benefit to the general public in that it freed individuals from facing arrest and criminal prosecution for a simple parking infraction and that the local and state legislation are replete with an exhaustive procedural process which must be followed before a judgment will issue. The court concluded that since no criminal constitutional guarantees attach to the procedures at issue, the legislature was within its rights in providing for administrative determination of fines and penalties. We agree with the district court's analysis.
 
 
 60
 For the foregoing reasons, we conclude that Chapter 2150 does not violate the Constitution. Accordingly, the judgment of the district court is AFFIRMED.
 
 
 
 [1]
 At the time this action was filed David Ort and Anne White served as city treasurer and clerk of the PVB respectively
 
 
 [2]
 Chapter 2150 decriminalized parking violations in the city and modified the procedures by which monetary penalties for parking violations were assessed
 
 
 [3]
 Section 2150.04(B) mandates that "[n]o person shall be employed as a hearing examiner unless the person is an attorney admitted to the practice of law in this state or formerly was employed as a law enforcement officer." As of the time this case was decided by the district court, no former law enforcement officer had been employed as a hearing examiner