Kenneth Jay WILSON, Plaintiff–
Appellant,

v.

Lewis YAKLICH, et al., Defendants–
Appellees,

United States of America,
Intervenor–Appellee.

Kenneth Jay WILSON, Plaintiff–
Appellant,

v.

Mary SANFORD, et al., Defendants–
Appellees.

Nos. 96–3023, 96–4323.

United States Court of Appeals,
Sixth Circuit.

Argued Dec. 9, 1997.

Decided June 8, 1998.

Rehearing and Suggestion for Rehearing
En Banc Denied July 27, 1998.

John M. Thomas (briefed), Ford Motor Company, Dearborn, MI, Kenneth Jay Wilson (briefed), Lebanon, OH, Robert T. Biskup (argued and briefed), Office of General Counsel, Ford Motor Company, Dearborn, MI, Jose L. Patino (argued and briefed), Office of Lead Counsel, Ford Pro Bono Volunteers, Ford Motor Company, Dearborn, MI, for Plaintiff–Appellant in No. 96–3023.

Todd R. Marti (argued and briefed), Office of the Attorney General, Corrections Litigation Section, Columbus, OH, Jeffrey Clair (argued and briefed), U.S. Department of Justice, Civil Division, Appellate Staff, Washington, DC, for Appellees in No. 96–3023.

Kenneth Jay Wilson (briefed), Lebanon, OH, Robert T. Biskup (argued), Office of General Counsel, Ford Motor Company, Dearborn, MI, for Plaintiff–Appellant in No. 96–4323.

Todd R. Marti (argued), Office of the Attorney General, Corrections Litigation Section, Carol Hamilton O'Brien (briefed), Attorney General of Ohio, Columbus, OH, for Defendant–Appellee in No. 96–4323.

Before: GUY, NELSON, and DAUGHTREY, Circuit Judges.

## OPINION

DAUGHTREY, Circuit Judge.

These two § 1983 cases were consolidated for argument, and counsel was appointed to represent the plaintiff, Kenneth Jay Wilson, an inmate of the Ohio correctional system who had originally filed the actions *pro se.* One of the cases, *Wilson v. Yaklich,* we now review on the merits, affirming the district court's determination that the claim is frivolous. The other, *Wilson v. Sanford,* we dismiss under the provisions of 28 U.S.C. § 1915(g) of the recently enacted Prison Litigation Reform Act (PLRA), which precludes the filing of *in forma pauperis* (IFP) civil actions by a prisoner who has had similar petitions dismissed as frivolous on three or more prior occasions. In so doing, we reject the plaintiff's argument that the PLRA is unconstitutional, both as applied to him and on its face.

Wilson is a frequent litigator in the federal courts. At the time the briefs were filed in these two cases, the Ohio Attorney General estimated that Wilson had filed a combined total of over 70 cases—seven of them in the Southern District of Ohio and 50 in the Northern District, as well as 17 appeals in this court. Moreover, files kept by the Attorney General indicate that although Wilson has been litigious, he has not been particularly successful—at least eight of his complaints were dismissed as frivolous prior to the enactment of the PLRA, and an additional six have been dismissed since the Act took effect.

## I. *Wilson v. Yaklich* (No. 96–3023)

■ In this case, Wilson appeals from the dismissal of his IFP civil rights action that alleged deliberate indifference by prison officials to threats against Wilson's safety. Specifically, he claims that the defendants, who are employees of the Ohio Department of Correction, "failed to protect [him] from the possible physical harm that he would have been subjected to had he not done what 'they' said." Although it is difficult to discern on the face of the complaint, it appears that the gist of Wilson's contention is that on two occasions, he received threats from the "Aryan Brotherhood" prison gang and that prison officials failed to take action to protect him. There is no allegation that he actually suffered any harm because of the defendants' conduct or that he is currently threatened with such harm. After a careful review of the record, we conclude that the factual allegations presented in this matter prevent the plaintiff from making an Eighth Amendment claim with even an arguable basis in law. We therefore concur in the conclusion that Wilson's claim is frivolous, and we affirm the judgment of the district court dismissing the complaint.

Congress first enacted an IFP statute in 1892 "to ensure that indigent litigants have meaningful access to the federal courts." *Neitzke v. Williams,* 490 U.S. 319, 324, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989) (citing *Adkins v. E.I. DuPont deNemours & Co.,* 335 U.S. 331, 342–43, 69 S.Ct. 85, 93 L.Ed. 43 (1948)). Recognizing, however, the potential abuses that could result when filing fees and court costs are paid by the public, Congress also enacted 28 U.S.C. § 1915(e)(2)(B)(i), providing that "[n]otwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal is frivolous or malicious." *See also Brooks v. Seiter,* 779 F.2d 1177, 1179 (6th Cir.1985).

■ Subsequent court decisions have established "that not all unsuccessful claims are frivolous." *Neitzke,* 490 U.S. at 329, 109 S.Ct. 1827. Rather, the provisions of the IFP statute should be used to dismiss an action only when the claim is "based on an indisputably meritless legal theory," or where a complaint's "factual contentions are clearly baseless." *Id.* at 327, 109 S.Ct. 1827. Stated differently, we have held that "an *in forma pauperis, pro se* complaint may only be dismissed as frivolous ... when the petitioner cannot make any claim with a rational or arguable basis in law or in fact." *Lawler v. Marshall,* 898 F.2d 1196, 1199 (6th Cir. 1990) (citing *Williams v. Faulkner,* 837 F.2d 304, 307 (7th Cir.1988), *aff'd by Neitzke* ).

■ The plaintiff asserts that his Eighth Amendment right not to be subjected to cruel and unusual punishment has been implicated by the defendants' failure to act in this case. Without question, prison officials have an affirmative duty to protect inmates from violence perpetrated by other prisoners. As the Supreme Court noted in *Farmer v. Brennan,* 511 U.S. 825, 833, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994), "[h]aving incarcerated persons with demonstrated proclivities for antisocial criminal, and often violent, conduct, having stripped them of virtually every means of self-protection and foreclosed their access to outside aid, the government and its officials are not free to let the state of nature take its course." (Internal quotation marks and citations omitted.)

■ Nevertheless, not all injuries suffered by an inmate at the hands of another prisoner result in constitutional liability for prison officials under the Eighth Amendment. Instead, the deprivation alleged "must result in the denial of 'the minimal civilized measure

of life's necessities,'" *id.* at 834, 114 S.Ct. 1970 (quoting *Rhodes v. Chapman,* 452 U.S. 337, 347, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981)), and, in prison condition cases such as the one presently before the court, the prison officials must exhibit deliberate indifference to the health or safety of the inmate. *Id.* Implicit in this standard is the recognition that the plaintiff must allege that he has suffered or is threatened with suffering actual harm as a result of the defendants' acts or omissions before he can make any claim with an arguable basis in Eighth Amendment jurisprudence. Wilson has completely failed to do so in this case.

■■■ The plaintiff primarily requests monetary relief from the defendants in the form of compensatory and punitive damages. Requests for damages, however, seek to compensate plaintiffs for past injuries. *See Carey v. Piphus,* 435 U.S. 247, 254–57, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978). In this case, Wilson advances no allegation that the Aryan Brotherhood actually injured him physically. Nor does he even hint that he has suffered any emotional or psychological injury from the alleged threats. Even if he had claimed a non-physical injury such as fear of assault at the hands of the prison gang, however, monetary damages for such alleged harm would not have been appropriate in *this* Eighth Amendment context. The Supreme Court itself has noted that *"extreme* deprivations are required to make out a conditions-of-confinement claim," *Hudson v. McMillian,* 503 U.S. 1, 9, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992) (emphasis added), as opposed to an excessive force claim. No such egregious failures on the part of prison officials have been established here. Also, as the Seventh Circuit recently concluded in *Babcock v. White,* 102 F.3d 267, 272 (7th Cir.1996):

> However legitimate [the plaintiff's] fears may have been, we nevertheless believe that it is the reasonably preventable assault itself, rather than any fear of assault, that gives rise to a compensable claim under the Eighth Amendment. [A] claim of psychological injury does not reflect the deprivation of "the minimal civilized measures of life's necessities," *Wilson v. Seiter,* 501 U.S. 294, 298, 111 S.Ct. 2321, 115

L.Ed.2d 271 ... (1991); *Rhodes v. Chapman,* 452 U.S. 337, 347, 101 S.Ct. 2392, 69 L.Ed.2d 59 ... (1981), that is the touchstone of a conditions-of-confinement case. Simply put, [the plaintiff] alleges, not a "failure to prevent harm," *Farmer,* 511 U.S. [at 834], 114 S.Ct. 1970 ..., but a failure to prevent exposure to risk of harm. This does not entitle [the plaintiff] to monetary compensation. *See Carey,* 435 U.S. 247, 258–59, 98 S.Ct. 1042, 55 L.Ed.2d 252 ("In order to further the purpose of § 1983, the rules governing compensation for injuries caused by the deprivation of constitutional rights should be tailored to the interests protected by the particular right in question—just as the common-law rules of damages themselves were defined by the interests protected in the various branches of tort law.").

■■■ Clearly, *injunctive* relief may be ordered by the courts when necessary to remedy prison conditions fostering unconstitutional threats of harm to inmates. Wilson's complaint, however, cannot be read to allege an ongoing constitutional violation by these defendants because Wilson is no longer incarcerated at Mansfield Correctional Institution, where the events that form the basis for his allegations in this case took place. Consequently, any claim for *injunctive* relief against the defendants in their official capacities is also unavailing.

■■■ Finally, to the extent Wilson's complaint could be liberally construed to raise also a due process challenge to the conduct or attitudes of the prison officials, the plaintiff has again failed to raise any possibility that appropriate facts or circumstances could be alleged that would justify relief. First, the law is well-settled that transfer to another institution generally does not implicate a protected liberty interest of the prisoner. *Sandin v. Conner,* 515 U.S. 472, 478, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995); *Meachum v. Fano,* 427 U.S. 215, 225, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976). Furthermore, the fact that Wilson was subjected to prison discipline for "refusing to lock in the general population area" does not raise due process concerns. In order to raise such a claim, the plaintiff must allege that the

prison regulations imposed an "atypical and significant hardship on [him] in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484, 115 S.Ct. 2293. This Wilson did not and could not do.

Thus, because Wilson could not, even through amendment of his pleadings, truthfully allege the existence of any injury justifying relief under established Eighth or Fourteenth Amendment jurisprudence, the legal theories advanced by the plaintiff must be considered "indisputably meritless." The district court, therefore, appropriately termed the plaintiff's complaint "frivolous" and dismissed it pursuant to the provisions of 28 U.S.C. § 1915(e)(2)(B)(i).

Our determination that Wilson's action is frivolous effectively terminates the appeal in Case No. 96–3023. There is, therefore, no need to address in Case No. 96–3023 the question raised on Wilson's behalf concerning the constitutionality of PLRA provisions, because the case can be resolved without resort to constitutional analysis.

## II. *Wilson v. Sanford* (No. 96–4323)

It is the second of Wilson's two cases that requires constitutional analysis of the so-called "three-strikes" provision in 28 U.S.C. § 1915(g). The literal language of that portion of the PLRA forbids almost all attempts by indigent prisoners to gain access to the federal courts in civil actions if the litigant has, on three prior occasions, had a case dismissed as frivolous, malicious, or for failure to state a claim upon which relief may be granted. Finding his access to the federal courts restricted as a result of the statute, plaintiff Wilson appeals from the district court's dismissal of seven civil claims and raises challenges to the retroactive application of the provisions of § 1915(g) and to the constitutionality of the law.

On April 26, 1996, President Clinton signed into law the Prison Litigation Reform Act of 1995. Part of that legislation, later codified at 28 U.S.C. § 1915(g), and now popularly known as the "three strikes" provision, states:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

In this case, Wilson moved on November 4, 1996, to be allowed to take advantage of the IFP provisions of 28 U.S.C. § 1915 to file seven civil cases against Ohio state employees under 42 U.S.C. § 1983. Because Wilson had previously filed at least three civil actions that had been termed "frivolous," and because the plaintiff did not allege that he was then under an imminent danger of serious physical injury, the district court ordered that the clerk "not accept for filing any civil actions brought by Kenneth Jay Wilson without the payment of the required filing fee." The plaintiff now appeals that determination to this court.

### A. Retroactive Application of the Statute

■ As a preliminary matter, Wilson argues that the provisions of § 1915(g) are inapplicable to this dispute because any "strikes" occurring prior to the effective date of the PLRA cannot be counted against him in his effort to prosecute his § 1983 causes of action. The State of Ohio counters by contending that this court need not resolve the retroactivity issue at this time, because at least three prior civil actions filed by the plaintiff *after* April 1996 were dismissed by federal courts for failure to state a proper claim. In support of its argument, the State refers to the decision in *Wilson v. Neal*, Nos. MS1–96–187 through MS1–96–193 (S.D.Ohio, Oct. 22, 1996), and maintains that the district court in that matter, *after* the enactment of the PLRA, dismissed six suits for failure to state a claim upon which relief could be granted.

Contrary to the State's assertion, however, the district court in *Wilson v. Neal* did not *dismiss* six actions for failure to state a claim. Rather, the court, recognizing that at

least three even earlier civil actions filed by Wilson had been dismissed as frivolous, ordered that the *Wilson v. Neal* complaints not be accepted for filing by the clerk. Hence, the *Wilson v. Neal* actions were never filed, could not have been dismissed as frivolous, and cannot serve as post-PLRA justification for the invocation of § 1915(g) sanctions. Because the three *pre*-PLRA cases that served as the basis for the *Wilson v. Neal* ruling do fall within the parameters of § 1915(g), however, we must determine whether the provisions of the statute may be applied retroactively to foreclose the plaintiff's claims.

Any such retroactivity analysis begins with the Supreme Court's pronouncement in *Landgraf v. USI Film Prods.*, 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994). In that decision, the Court outlined the proper procedure for determining whether a statute's reach may be extended to situations predating the legislation by explaining:

> When a case implicates a federal statute enacted after the events in suit, the court's first task is to determine whether Congress has expressly prescribed the statute's proper reach. If Congress has done so, of course, there is no need to resort to judicial default rules. When, however, the statute contains no such express command, the court must determine whether the new statute would have retroactive effect, *i.e*, whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed. If the statute would operate retroactively, our traditional presumption teaches that it does not govern absent clear congressional intent favoring such a result.

*Id.* at 280, 114 S.Ct. 1483.

The language of § 1915(g) broadly refers to actions dismissed on "prior occasions." Moreover, Congress's intent to curb frivolous prisoner litigation would not be furthered by interpreting the statutory command to apply only after a litigious prisoner files what may amount to three *additional* frivolous appeals. Nevertheless, the statute still "lacks 'the kind of unambiguous directive' that clearly shows

Congress intended § 1915(g) to apply to suits dismissed prior to its enactment." *Green v. Nottingham*, 90 F.3d 415, 419 (10th Cir.1996) (quoting *Landgraf*, 511 U.S. at 263, 114 S.Ct. 1483).

 Absent an express prescription by Congress of a statute's proper reach, we proceed to the second step of the *Landgraf* analysis and determine whether the provision actually has a retroactive effect. Ordinarily, "[b]ecause rules of procedure regulate secondary rather than primary conduct, the fact that a new procedural rule was instituted after the conduct giving rise to the suit does not make application of the rule at trial retroactive." *Landgraf*, 511 U.S. at 275, 114 S.Ct. 1483. All other circuits that have addressed this issue have concluded that § 1915(g) is, in fact, just such ·a procedural rule and thus may be applied to cases filed prior to the effective date of the PLRA. *See Tierney v. Kupers*, 128 F.3d 1310, 1311 (9th Cir.1997); *Keener v. Pennsylvania Bd. of Probation & Parole*, 128 F.3d 143, 144–45 (3d Cir.1997); *Adepegba v. Hammons*, 103 F.3d 383, 385–86 (5th Cir.1996); *Abdul–Wadood v. Nathan*, 91 F.3d 1023, 1025 (7th Cir.1996); *Green*, 90 F.3d at 419–20.

Additionally, courts have held that § 1915(g) does not alter the merits of the underlying actions. *Green*, 90 F.3d at 420. To the extent that § 1915(g) does attach additional consequences to past actions, moreover, those consequences are not matters of substance, but only of the procedure required to pursue future claims. *Adepegba*, 103 F.3d at 386. Also, the courts have noted that, even prior to enactment of the PLRA, prisoners were liable for the costs of suits filed, although the collection of those costs was deferred. Furthermore, the federal courts themselves have long been authorized to revoke a prisoner's ability to proceed *in forma pauperis* upon determining that the litigant was taking unfair advantage of IFP procedures. Thus, "[t]he 'three strikes' provision merely codifies an existing practice in the courts designed to prevent prisoners from abusing the [IFP] privilege," and "does not impose new or additional liabilities, but instead requires collection of a fee that was always due." *Id.* at 386–87.

We see no reason to depart from the analysis adopted by other circuits that have addressed the retroactivity issue, and we thus hold that dismissals of previous actions entered prior to the effective date of the PLRA may be counted toward the "three strikes" referred to in 28 U.S.C. § 1915(g). After determining that the "three strikes" provision applies to Wilson's present filings, we must now examine the plaintiff's constitutional challenges to the operation of § 1915(g).

## B. Equal Protection Challenge

Wilson first argues that § 1915(g) infringes upon the protections afforded him by the constitution's Equal Protection Clause. Specifically, he argues that he, as an indigent prisoner, is treated differently than other litigants in prosecuting § 1983 claims, and that § 1915(g) infringes upon his fundamental constitutional right of access to the courts for redress of grievances.

Initially, it must be re-emphasized that "[t]he Supreme Court has recognized that '[p]rison walls do not form a barrier separating prison inmates from the protections of the Constitution.'" *Washington v. Reno,* 35 F.3d 1093, 1099 (6th Cir. 1994) (quoting *Turner v. Safley,* 482 U.S. 78, 84, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987)). Prisoners like Wilson, therefore, may invoke constitutional safeguards as may other individuals whose freedom is not restrained by the power of the government. Moreover, this court utilizes the same method of analysis in responding to the plaintiff's equal protection claim as it does in other contexts. Consequently, "[u]nless a classification trammels fundamental personal rights or is drawn upon inherently suspect distinctions such as race, religion, or alienage, our decisions presume the constitutionality of the statutory discriminations and require only that the classification challenged be rationally related to a legitimate state interest." *City of New Orleans v. Dukes,* 427 U.S. 297, 303, 96 S.Ct. 2513, 49 L.Ed.2d 511 (1976).

The plaintiff claims that he is now treated differently than non-indigent prisoners or indigent non-prisoners as a result of the application of § 1915(g). Because neither indigents nor prisoners are a suspect class, however, *Harris v. McRae,* 448 U.S. 297, 323, 100 S.Ct. 2671, 65 L.Ed.2d 784 (1980); *Hampton v. Hobbs,* 106 F.3d 1281, 1286 (6th Cir.1997), such differentiation is permissible as long as even a rational basis for the differing treatment can be shown. *United States v. Kras,* 409 U.S. 434, 446, 93 S.Ct. 631, 34 L.Ed.2d 626 (1973).

This court has held that "[d]eterring frivolous prisoner filings in the federal courts falls within the realm of Congress's legitimate interests...." *Hampton,* 106 F.3d at 1287. In an effort to lessen the crush of such filings on the courts, Congress has concluded that prisoners who are not under threat of immediate harm and who have, on at least three prior occasions, filed frivolous lawsuits should be barred, not from ever filing another law suit in federal court, but merely from instituting such claims at additional expense to the taxpayers. Such a differentiation between indigent and non-indigent litigants has a rational basis.

Likewise, the further differentiation between prisoners and non-prisoners also has a rational basis. As the Fifth Circuit explained in *Carson v. Johnson,* 112 F.3d 818, 822 (5th Cir.1997):

Prisoners have substantially more free time than do non-prisoners and are provided with food, housing, paper, postage, and legal assistance by the government. *See Roller* [*v. Gunn* ], 107 F.3d [227,] 234 [ (4th Cir.1997) ].

Furthermore, "pro se civil rights litigation has become a recreational activity for state prisoners," *Gabel v. Lynaugh,* 835 F.2d 124, 125 n. 1 (5th Cir.1988) (per curiam), and prisoners have abused the judicial system in a manner that non-prisoners simply have not.

Consequently, even though we might not believe the solution advanced by Congress to be the best possible, or even a prudent, response to the problem presented, the legislation cannot be deemed violative of the Equal Protection Clause on the basis of differing treatment of these diverse groups.

■ Wilson also contends that § 1915(g) contravenes equal protection principles because it interferes with his fundamental constitutional right of access to the courts. The Supreme Court has consistently recognized the existence of such a right, *Lewis v. Casey*, 518 U.S. 343, 116 S.Ct. 2174, 2179, 135 L.Ed.2d 606 (1996); *Bounds v. Smith*, 430 U.S. 817, 821, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977), and this court has noted that the right is indeed "fundamental." *Ward v. Dyke*, 58 F.3d 271, 275 (6th Cir. 1995). The access to be afforded the inmate must, moreover, be "adequate, effective, and meaningful." *Hampton*, 106 F.3d at 1284 (citing *Bounds*, 430 U.S. at 822, 97 S.Ct. 1491).

■ Both as written and as applied in this case, § 1915(g) does not infringe upon the fundamental right of access to the courts. The plaintiff, despite being barred from bringing his present § 1983 claims in federal court as an indigent, still had available to him at the time of the initial filing the opportunity to litigate his federal constitutional causes of action *in forma pauperis* in state court. *See Patsy v. Board of Regents of Florida*, 457 U.S. 496, 506–07, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982). As long as a judicial forum is available to a litigant, it cannot be said that the right of access to the courts has been denied. *Hampton*, 106 F.3d at 1285.

## C. Due Process Challenge

Wilson next argues that the alleged denial of access to the courts violates a fundamental right guaranteed by substantive due process principles. He contends that distinctions drawn in § 1915(g) between prisoners and non-prisoners, and between indigents and non-indigents are arbitrary, and also insists that the determination that only three prior dismissals of prison suits will trigger the statute's sanctions was arbitrary and capricious as well.

As discussed previously in reference to the plaintiff's equal protection challenges, Wilson cannot demonstrate in this case a denial of his right to access the courts. All claims pursued by the plaintiff in his underlying causes of action could have been filed in Ohio's state courts even if federal law pre-cluded the exercise of district court jurisdiction. Absent a showing by the plaintiff that Ohio law or Ohio court rules also prevented him, as an indigent prison litigant, from pursuing his claims, we need not engage in further analysis of Wilson's access-to-courts argument.

■ Furthermore, again for reasons discussed in the equal protection analysis above, any distinctions drawn by the legislation are rationally related to the congressional objective of lessening the number of frivolous prison suits prosecuted at taxpayers' expense. Unquestionably, other cures for the problem could have been tried and might have been better suited to the ultimate purpose of the legislation. The fact that Congress does not choose the most logical or best solution in any given situation does not mean, however, that the chosen antidote is arbitrary, capricious, or fundamentally unfair.

■ Finally, Congress's decision to bar the filing of IFP prisoner claims after only three dismissals of the plaintiff's prior causes of action on grounds of legal inadequacy, frivolousness, or malice does not implicate due process principles. A legislative body may rationally and appropriately presume that three such dismissals are indicative of a propensity to abuse the court system. Once more, as long as other avenues are available to IFP prison litigants to air meritorious grievances before the courts, the provisions of 28 U.S.C. § 1915(g) do not contravene substantive due process principles.

## D. Bill of Attainder Challenge

■ Wilson next insists that the enactment of § 1915(g) constitutes passage of a bill of attainder prohibited by the explicit provisions of Article I, § 9, cl. 3 of the United States Constitution. The Supreme Court has defined a bill of attainder as "a law that legislatively determines guilt and inflicts punishment upon an identifiable individual without provision of the protections of a judicial trial." *Selective Serv. Sys. v. Minnesota Pub. Interest Research Group*, 468 U.S. 841, 846–47, 104 S.Ct. 3348, 82 L.Ed.2d 632 (1984). We have thus recognized that "there

are three essential elements to a bill of attainder: 'specificity ..., punishment, and lack of a judicial trial.'" *Zilich v. Longo*, 34 F.3d 359, 362 (6th Cir.1994) (quoting *Selective Serv. Sys.*, 468 U.S. at 847, 104 S.Ct. 3348).

In § 1915(g), Congress does not specify particular individuals for punishment, but rather defines a group—indigent prisoners seeking to file civil actions after having had at least three prior cases dismissed as frivolous, malicious, or failing to state a claim—that is subject to the directives of the legislation. The wording and import of § 1915(g), moreover, satisfies neither of the remaining elements of bills of attainder. First, the statutory subsection is unquestionably civil in its effect and may never impact most members of the group targeted by its provisions. As a result, it cannot be considered "punishment." Second, the statute does not operate to the disadvantage of targeted group members in the complete absence of judicial intervention. Only after a judicial tribunal determines that three separate filings by an indigent, incarcerated litigant are so meritless as to fail to present even a chance of success may the statute's sanctions be imposed. Under such circumstances, we do not find that § 1915(g) constitutes a bill of attainder.

### E. Ex Post Facto Challenge

 As his final issue, Wilson contends that the "three strikes" provision of the PLRA should be invalidated as unconstitutional *ex post facto* legislation. We have unambiguously determined, however, that *ex post facto* principles have no application in civil contexts, but instead apply only to punitive legislation. *Campos v. INS*, 16 F.3d 118, 122 (6th Cir.1994)(citing *Galvan v. Press*, 347 U.S. 522, 531–32, 74 S.Ct. 737, 98 L.Ed. 911 (1954)); *Gardner v. City of Columbus, Ohio*, 841 F.2d 1272, 1280 (1988). The provisions of § 1915(g), by their very terms, apply only to the filing of civil actions and, while they may impact individuals incarcerated in the criminal justice system, are procedural in nature and were not enacted to affect the punishments already meted out for crimes. They do not, therefore, run afoul of the prohi-

bition on *ex post facto* legislation. *United States v. Knipp*, 963 F.2d 839, 844 (6th Cir. 1992). Here, as in *Hopt v. Utah*, 110 U.S. 574, 589–90, 4 S.Ct. 202, 28 L.Ed. 262 (1884) (quoted in *Dobbert v. Florida*, 432 U.S. 282, 294, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977)), "[t]he crime for which the ... defendant was indicted, the punishment prescribed therefor, and the quantity or the degree of proof necessary to establish his guilt, all remained unaffected by the subsequent statute."

### CONCLUSION

We have recognized that the right of access to the courts is fundamental. To the extent that any provisions of 28 U.S.C. § 1915(g) restrict the right to have arguably meritorious claims reviewed, those provisions could be deemed unconstitutional. In this case, however, Wilson has failed to show that he has been deprived of all court access as a result of his indigency. Section 1915(g) does not, therefore, unconstitutionally infringe upon his equal protection or due process rights to petition the courts for review in this matter. All other constitutional claims raised by the plaintiff are also without merit. We therefore AFFIRM the judgment of the district court dismissing Wilson's underlying § 1983 claims, in No. 96–3023 as frivolous and in No. 96–4323 as barred by provisions of the PLRA.